**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GENUS LIFESCIENCES, INC., | |
| *Plaintiff,* | |
| v. | Case No. 1:20-cv-00211-TNM |
| ALEX AZAR, Secretary of Health and Human Services, et al., | |
| *Defendants,* | |
| LANNETT CO., INC. | |
| *Intervenor-Defendant.* | |

**FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF GENUS LIFESCIENCES, INC.'S MOTION TO COMPLETE THE ADMINISTRATIVE RECORD**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................3

ARGUMENT ............................................................................................................6

     I.     Standard of Review....................................................................................6

     II.    Genus Has Failed to Overcome the Strong Presumption of Regularity
             Afforded to the Administrative Record ....................................................8

             A.     "Category 1" Emails ....................................................................9

             B.     "Category 2" Emails ..................................................................11

             C.     "Category 3" Emails ..................................................................15

     III.   This Court Should Not Review *In Camera* Emails Redacted in the FOIA
             Production...............................................................................................18

CONCLUSION.......................................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page(s)

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971).................................................................................................. 6

*County of San Miguel v. Kempthorne,*
587 F. Supp. 2d 64 (D.D.C. 2008) ......................................................................... 6

*Ctr. for Auto Safety v. E.P.A.,*
731 F.2d 16 (D.C. Cir. 1984) ................................................................................ 18

*DeFraia v. Central Intelligence Agency,*
311 F. Supp. 3d 42 (D.D.C. 2018) ........................................................................ 19

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
532 U.S. 1 (2001).................................................................................................... 3

*Florida Power & Light Co. v. Lorion,*
470 U.S. 729 (1985)................................................................................................ 6

*\*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n,*
345 F. Supp. 3d 1 (D.D.C. 2018) ........................................................................... 6

*Judicial Watch, Inc. v. Food & Drug Admin.,*
449 F.3d 141 (D.C. Cir. 2006) ........................................................................... 3, 7

*Marcum v. Salazar,*
751 F. Supp. 2d 74 (D.D.C. 2010) ......................................................................... 7

*Privacy Info. Ctr. v. Dep't of Justice,*
320 F. Supp. 3d 110 (D.D.C. 2018) ....................................................................... 7

*Stand Up for California! v. U.S. Dep't of Interior,*
71 F. Supp. 3d 109 (D.D.C. 2014) ......................................................................... 8

*\*Stand Up for California! v. U.S. Dep't of Interior,*
315 F. Supp. 3d 289 (D.D.C. 2018) ....................................................................... 7

*\*TOMAC v. Norton,*
193 F. Supp. 2d 182 (D.D.C.) ................................................................................ 8

*Univ. of Colorado Health at Mem'l Hosp. v. Burwell,*
151 F. Supp. 3d 1 (D.D.C. 2015) ........................................................................... 7

*Veloxis Pharms., Inc. v. Food & Drug Admin.*,
   109 F. Supp. 3d 104 (D.D.C. 2015) ............................................................................. 1, 7

*\*WildEarth Guardians v. Salazar*,
   670 F. Supp. 2d 1 (D.D.C. 2009) ................................................................................... 6

## FEDERAL STATUTES

5 U.S.C. § 706 ................................................................................................................... 6

5 U.S.C. § 552(b)(5) .......................................................................................................... 3

21 U.S.C. § 355(b)(2) ........................................................................................................ 1

21 U.S.C. § 355(c)(3)(E)(ii) .............................................................................................. 4

## FEDERAL REGULATIONS

21 C.F.R. § 314.3(b) ........................................................................................................ 12

21 C.F.R. § 314.60(c) ...................................................................................................... 12

## OTHER AUTHORITIES

*Development & Approval Process*, Drugs, https://www.fda.gov/drugs/development-approval-
   process-drugs ................................................................................................................ 4

Mayo Clinic, Prolonged QT-interval, https://www.mayoclinic.org/diseases-conditions/long-qt-
   syndrome/multimedia/prolonged-q-t-interval/img-20007972 ................................. 13

*Office of Regulatory Policy*, https://www.fda.gov/about-fda/center-drug-evaluation-and-research-
   cder/office-regulatory-policy .......................................................................................... 6

*Regulatory Health Project Manager Jobs in CDER*, https://www.fda.gov/about-fda/jobs-center-
   drug-evaluation-and-research/regulatory-health-project-manager-jobs-cder (last visited
   August 19, 2020) ............................................................................................................. 5

iii

**INTRODUCTION**

In this lawsuit, Plaintiff Genus Lifesciences, Inc. ("Genus") challenges, under the Administrative Procedure Act ("APA"), the Food and Drug Administration's ("FDA") approval of Intervenor-Defendant Lannett Company, Inc.'s ("Lannett") new drug application ("NDA" or "application") for cocaine hydrochloride. Following FDA's production of the administrative record totaling more than 15,000 pages, the parties cross moved for summary judgment. The summary judgment briefing is complete. Genus has now filed a Motion to Complete the Administrative Record ("Motion"), asking the Court to order FDA to add to the record 33 pages of emails, identified in Genus's Exhibits A-C, that its attorneys obtained in a separate FOIA action. Genus's Motion should be denied because Genus has failed to rebut the strong presumption of regularity courts afford to the agency's administrative record.

An administrative record is composed of all documents the agency decisionmaker considered, directly or indirectly, in reaching the challenged actions. None of the emails in Genus's Exhibits A-C satisfies that standard. Rather, they reflect day-to-day communications, primarily among FDA project managers, regarding the status of Genus's and Lannett's applications. Some of the emails show that FDA personnel were unsure how the 5-year new chemical entity ("NCE") exclusivity provision would apply to this unusual set of facts involving two concurrently pending 505(b)(2) applications,[1] where the first application FDA approved

---

[1] Genus and Lannett both submitted their applications for cocaine hydrochloride pursuant to 21 U.S.C. § 355(b)(2). Such applications are generally referred to as "505(b)(2) applications." Approval of a 505(b)(2) application has been described as an "intermediate" process because it requires an applicant to meet the safety and effectiveness standard of a new drug application, but a 505(b)(2) application may rely on a combination of the applicant's own studies and other sources to meet the approval requirements. *See* 21 U.S.C. § 355(b)(2); *Veloxis Pharms., Inc. v. Food & Drug Admin.*, 109 F. Supp. 3d 104, 108 (D.D.C. 2015).

would be eligible for 5-year NCE exclusivity.  *See* ECF 52-8, Joint Appendix ("JA") at 1921 (July 1, 2019 FDA response to Genus citizen petition).  But these communications were not considered by any FDA decisionmaker in deciding whether Genus's or Lannett's applications met the filing or approval standard.  To the extent these documents contain information about the decisions FDA made, that information appears elsewhere in the record and these emails are merely cumulative.

Lacking a persuasive argument that these emails meet the standard for inclusion in the administrative record, Genus instead contends that the emails support its theory that FDA favored Lannett over Genus by: (1) purposefully delaying its approval of Genus's application until it had filed Lannett's application; (2) "creating" an interpretation of the 5-year NCE exclusivity statute for the purpose of allowing Lannett to respond to FDA's request for additional information; and (3) applying a more lenient filing standard to Lannett's application.  Genus's theory, however, is not supported by these emails or anything else in the administrative record.  The emails do not reflect any favoritism toward Lannett.  Rather, they simply show FDA personnel acknowledging that there were two applications under review for cocaine hydrochloride and attempting to understand how the 5-year NCE exclusivity provision applied under these circumstances.  In any event, whether the emails support one party's theory is irrelevant to the issue raised by Genus's Motion:  whether Genus has rebutted the presumption of regularity afforded to the administrative record by providing non-speculative grounds that FDA considered these emails in reaching the challenged decisions.  Genus has failed to do so, and its Motion should be denied.

## **FACTUAL BACKGROUND**

The factual background for the parties' underlying dispute is recounted in the Federal Defendants' Memorandum in Support of Their Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ("Defs. Mem."), ECF 30-1 at 10-14.  As relevant to Genus's Motion to Complete the Administrative Record, Latham & Watkins LLP ("Latham") sued FDA on February 21, 2020, seeking documents in response to a FOIA request submitted to FDA related to its approval of Genus's cocaine hydrochloride drug Goprelto and Lannett's cocaine hydrochloride drug Numbrino.  *See Latham & Watkins LLP v. Food & Drug Admin.*, 1:20-cv-00509-TNM (D.D.C. 2020).  Pursuant to the Court's order in that case, Latham and FDA have met and conferred multiples times and negotiated the scope of FDA's production.  *Id.*  Up to this point, FDA has produced 2,976 pages of documents, consisting mostly of emails.  *See id.*, Joint Status Reports, ECF 10-14.  Some documents were redacted based on what is known as FOIA "Exemption 5," *see* 5 U.S.C. § 552(b)(5), which exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party . . . in litigation with the agency," *id.*; *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 6 (2001).  Exemption 5 incorporates statutory and common law privileges, including the deliberative-process, attorney-client and attorney work-product privileges.  *Klamath Water Users Protective Ass'n*, 532 U.S. at 6.  Latham and FDA agreed to defer the question of whether FDA would produce a "*Vaughn* index" until FDA's production is complete.  *See Latham*, 1:20-cv-00509-TNM, ECF 10 at 2.  A *Vaughn* index would allow FDA to "provide descriptions of withheld documents" and give the "court and the challenging party a measure of access without exposing the withheld information."  *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006).  Latham has not challenged any of the Exemption 5

redactions in the FOIA action.  FDA expects to complete its production of responsive documents

by the end of November 2020.  *See Latham*, 1:20-cv-00509-TNM, ECF 14 at 2.

Of the nearly 3,000 pages FDA has produced in the FOIA action, Genus moves to add 33

pages of emails to the administrative record in this action.  Latham groups these emails into three

categories, found in Exhibits A-C, characterizing them as follows: (1) three emails "indicating

that FDA altered its acceptance/approval schedule with the purpose of defeating Genus's

exclusivity" (Category 1/Exhibit A);[2] (2) three emails "contradicting FDA's arguments regarding

Lannett's 'resubmission' of its 'application'" (Category 2/Exhibit B); and (3) four emails

"showing FDA's arbitrary filing standards favored Lannett's application" (Category 3/Exhibit

C).  ECF 54, Pl. Mot, at 8, 13, 18.

To place these emails in their proper context, a brief discussion is warranted of the FDA

division involved in approving Genus's and Lannett's applications and the responsibilities of

individuals who wrote or received these emails.  FDA's Center for Drug Evaluation and

Research ("CDER") oversees the new drug approval process.  When a drug application is under

consideration, a team of CDER physicians, statisticians, chemists, pharmacologists, and other

scientists review data provided by the company seeking approval of the drug.[3]  Within CDER,

---

[2] Genus asserts that it is undisputed that Lannett's application would have been barred by
Genus's 5-year NCE exclusivity if FDA approved Genus's drug after Lannett submitted its
application, but before FDA determined that Lannett's application was sufficient to file.  ECF
54, Pl. Mot. at 8.  Federal Defendants disagree.  This question was not presented in this case and
has not been briefed.  Moreover, Federal Defendants note that the 5-year NCE exclusivity
provision prohibits the "submission" of an application under certain circumstances, not the
"filing" of an application.  21 U.S.C. § 355(c)(3)(E)(ii).

[3] *See Development & Approval Process*, *Drugs*, https://www.fda.gov/drugs/development-
approval-process-drugs (last visited August 19, 2020).

the Division of Anesthesia, Analgesia, and Addiction Products ("DAAAP") reviewed Genus's and Lannett's applications.  At the time of their applications, the Director of DAAAP was Sharon Hertz, and one of the Deputy Directors was Rigoberto Roca.  The Agency's letters to Genus and Lannett informing them that their applications had been filed were signed by Director Sharon Hertz.  ECF 52-3, JA 846 (FDA Filing Communication to Lannett); ECF 52-1, JA 127 (FDA Filing Communication to Genus).  Deputy Director Rigoberto Roca signed the letters notifying Genus and Lannett that FDA had approved their cocaine hydrochloride drugs.  ECF 52-2, JA 577 (Approval Letter for Goprelto); ECF 52-5, JA 1323 (Approval Letter for Numbrino).

In order to manage the drug approval process, DAAAP employs regulatory project managers to plan, focus, and coordinate team activities; "[p]lan and organize the work of the review teams to accomplish a variety of concurred activities"; and "[s]erve as the point of contact for all communications concerning applications in the assigned drug classes."[4] The regulatory program manager position does not require an advanced medical or scientific degree, and the regulatory project managers do not decide whether a drug application should be filed or approved.  Shelly Kapoor was the regulatory project manager for Lannett's application, and Diana Walker was the senior regulatory project manager for Genus's application.  Matthew Sullivan was the lead project manager for DAAAP.

---

[4] *See Regulatory Health Project Manager Jobs in CDER*, https://www.fda.gov/about-fda/jobs-center-drug-evaluation-and-research/regulatory-health-project-manager-jobs-cder (last visited August 19, 2020).

FDA's Office of Regulatory Policy ("ORP") works with CDER to "[a]dvise and assist on the scope, applicability and meaning of the Food, Drug, and Cosmetic Act and other applicable laws, regulations, and policies."[5]  At the time of these applications, Jay Sitlani was a Senior Regulatory Counsel in ORP, providing guidance regarding technical and regulatory issues concerning application of the Food, Drug, and Cosmetic Act.  Separate from ORP is the Office of Chief Counsel ("OCC"), whose attorneys, among other things, provide legal advice and handle litigation on behalf of the FDA.

## ARGUMENT

### I.    Standard of Review

In APA cases, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court."  *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).  The record is the "the full administrative record that was before the [agency decisionmaker] at the time [it] made [its] decision."  *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971).  The administrative record consists of the documents that were considered, directly or indirectly, by the agency decisionmaker in reaching the decision on the challenged action.  *See Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345 F. Supp. 3d 1, 9 (D.D.C. 2018); *County of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 72 (D.D.C. 2008).  "[T]he administrative record should not include materials that were not considered by agency decisionmakers."  *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 4 (D.D.C. 2009) (citation

---

[5] *See Office of Regulatory Policy*, https://www.fda.gov/about-fda/center-drug-evaluation-and-research-cder/office-regulatory-policy (last visited August 19, 2020).

and quotation marks omitted) (emphasis added).  To the extent the emails contain information cumulative of what is already in the administrative record, they are not necessary to complete the record.  *See Veloxis Pharm.*, 109 F. Supp. 3d at 125 (denying motion to supplement the record and explaining that meeting minutes "are cumulative, as the FDA has already included its substance in the administrative record").

The record also does not include "deliberative intra-agency documents, which are ordinarily privileged."[6]  *Stand Up for California! v. U.S. Dep't of Interior*, 315 F. Supp. 3d 289, 293 (D.D.C. 2018).  To be protected by the deliberative-process privilege, a document must be both predecisional and deliberative.  A document is "'predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process.'"  *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 320 F. Supp. 3d 110, 118 (D.D.C. 2018) (quoting *Judicial Watch*, 449 F.3d at 151).

The administrative record is entitled to a strong presumption of regularity.  *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010).  To overcome this presumption, Genus "must do more than simply assert 'that materials were relevant or were before an agency when it made its decision.'"  *Univ. of Colorado Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 13 (D.D.C.

―――――――――――――――

[6] Genus improperly relies on a 1999 non-binding memorandum from the Department of Justice's Environmental and Natural Resources Division ("ENRD"), as support for its position that the administrative record should have included the 33 pages of emails.  In doing so, Genus suggests that certain deliberative documents should be part of the record.  In 2008, the Justice Department issued a memorandum explaining that "deliberative documents are not generally required in an administrative record," and the 1999 memorandum "should not be read as casting doubt on this legal position." Ex. A at 1. In 2017, the Justice Department reaffirmed that "agency deliberative documents – *i.e.*, documents reflecting the agency's predecisional deliberative process – generally are not relevant to APA review, and including them in the record would inhibit agency decision-making." Ex. B at 1.

2015) (quoting *Marcum*, 751 F. Supp. 2d at 78).  Instead, Genus "must identify reasonable, *non-speculative* grounds for its belief that the documents were considered by the agency and not included in the record."  *Id.* (emphasis in original).

In contrast to the scope of an administrative record, a FOIA request may require the government to turn over "every scrap of paper that could or might have been created."  *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002), *aff'd sub nom. TOMAC v. Norton*, 433 F.3d 852 (D.C. Cir. 2006).  Accordingly, "[a]n agency's possession of certain records, as confirmed by their disclosure in response to a FOIA request, is not sufficient to show that the same records were considered by the agency in connection with a decision subject to an APA challenge and, consequently, mere possession triggers no requirement to include such records in the administrative record."  *Stand Up for California! v. U.S. Dep't of Interior*, 71 F. Supp. 3d 109, 117 (D.D.C. 2014); *contra* ECF 54, Pl. Mot. at 1, 4 (suggesting that every document Latham obtained in the FOIA actions should be part of the record).

## II.    Genus Has Failed to Overcome the Strong Presumption of Regularity Afforded to the Administrative Record

Genus has failed to show that the 33 pages of emails were considered, directly or indirectly, by agency decisionmakers in reaching any actions challenged in this lawsuit.  These emails reflect day-to-day communications, primarily among FDA personnel managing Lannett's and Genus's applications.  Thousands of these types of emails were exchanged during the lengthy approval process for these drugs, but Genus has picked these 33 pages of emails because it believes they support its theory that FDA favored Lannett.  As described below, these emails are not properly part of the administrative record, nor do they lend credence to Genus's theory.

### A.  "Category 1" Emails

Genus first asserts that three email chains from October 2017 show that "key FDA decisionmakers sought to alter the acceptance and approval schedules for Lannett and Genus to benefit Lannett—with the specific purpose of defeating Genus's statutory exclusivity."  ECF 54, Pl. Mot. at 8.  Genus, however, mischaracterizes the emails and fails to set forth non-speculative grounds that they were actually considered by FDA decisionmakers.

**FDACDER002239-002241** (October 17, 2017).  In this email chain, project manager Diana Walker emailed several FDA personnel, including counselor Jay Sitlani, to notify them of "a potential exclusivity/blocking issue," explaining that DAAAP had "2 NDAs in house" for topical cocaine products—Genus's and Lannett's.  The remainder of the email chain is largely redacted under FOIA Exemption 5.  Although Genus describes this document in its Motion, it fails to make any showing that the document was considered, either directly or indirectly, by FDA decisionmakers.  *Id.* at 9.  Genus could not have met its burden even if it tried: the unredacted portions of this email chain simply reflect a recognition, among non-decisionmakers, that Lannett's and Genus's applications could raise an exclusivity issue.

**FDACDER002257-002259** (October 26-27, 2017).  In late October 2017, while reviewing Lannett's application, project manager Shelly Kapoor emailed lead project manager Matthew Sullivan, and asked if Lannett's application could be filed if FDA approved Genus's application first.  Sullivan forwarded Kapoor's question to Sara Stradley, Associate Director of Regulatory Affairs, whose duties included providing input on regulatory questions to CDER's divisions, including DAAAP.  Stradley asked Jay Sitlani this question and sent his response (redacted pursuant to FOIA exemption (b)(5)) to Sullivan and Kapoor.  Stradley also noted that

Sitlani wanted to speak with FDA's OCC for confirmation.  Importantly, none of these emails involved individuals who made the filing and approval decisions on Genus's and Lannett's applications.  And Genus does not even contend that the unredacted portions of this email chain were considered, directly or indirectly, by a decisionmaker in reaching a decision regarding Genus's or Lannett's application.

Furthermore, Genus mischaracterizes these emails.  Contrary to Genus's assertion, this exchange does not suggest that anyone intended to alter the timing of key events to "defeat" Genus's exclusivity.[7]  Rather, it merely reflects that the project managers did not know how the 5-year NCE exclusivity statute would apply to these unusual circumstances and therefore sought advice from ORP and OCC.

**FDACDER002264-002265** (October 30, 2017).  In this document, Sara Stradley emailed Rigoberto Roca and Diana Walker, copying Sharon Hertz and Kapoor, to ask when they planned to take action (*i.e.*, decide whether to approve or deny) on Genus's application.  She also asked whether this would happen before or after the "filing date" (*i.e.*, the date by which FDA determines if an application is sufficiently complete for filing) for Lannett's application. Stradley explained that she was working with Jay Sitlani to seek legal input on Lannett's application from ORP and OCC.  Kapoor then responded that Sitlani had asked "if it would be possible to," and the remainder of her email was redacted in the FOIA production under Exemption 5.  Roca responded: "That may very well what will come to pass, because . . . there

---

[7] Sullivan's hope that "OCC doesn't have a different view of things," follows after his expressed relief at having obtained a clarification from Sitlani.  It is best understood as a desire that the clarification not be disturbed by different advice from the FDA office that is authorized to give legal advice.

are a couple of things to get tidied up," and suggested that they "talk some more later."

Unlike the other two documents in Category 1, this email chain includes an email from Rigoberto Roca, who has authority to make filing and approval decisions for new drug applications. But the email was not considered, directly or indirectly, by Roca in taking any such action with respect to either Genus's or Lannett's application. Rather, it reflects: (1) Stradley's question about the timing of Genus's application; (2) that Sitlani posed a question; and (3) Roca's suggestion that they "talk some more later." Recognizing that the unredacted portions of this email are not part of the administrative record, Genus argues that the Court should review the redacted portion *in camera* and conclude that it was not properly redacted pursuant to Exemption 5. As described below, *see infra* 19-21, Genus's argument fails.

In short, these three documents reflect questions and preliminary discussions about Genus's and Lannett's applications, but they were not directly or indirectly considered by FDA decisionmakers in reaching any decision related to Genus's or Lannett's application. Thus, they are not properly part of the administrative record

### B. "Category 2" Emails

With Category 2, Genus seeks to add three email chains to the administrative record that it contends reveal that FDA "created" a statutory interpretation of the 5-year NCE exclusivity provision "to justify accepting Lannett's resubmission and to support its prior decision not to honor Genus's exclusivity."[8] ECF 54, Pl. Mot. at 16. Viewed in their proper context, these

---

[8] In discussing Category 2, Genus improperly responds to arguments raised by the Federal Defendants in their reply brief to their cross-motion for summary judgment, effectively granting itself a surreply. ECF 54, Pl. Mot. at 14-16. Federal Defendants have already extensively briefed the meaning of "resubmission," but Genus's assertion that these emails show that FDA's

emails do not show that FDA "created" a statutory interpretation to benefit Lannett, and they are not part of the administrative record.

**FDACDER002434-FDACDER002441** (January 24, 2018-April 25, 2018).  Although this document includes several exchanges, Genus focuses on the conversation between project manager Shelly Kapoor and counselor Jay Sitlani beginning on February 21, 2018.  Kapoor asked Sitlani whether Goprelto's 5-year NCE exclusivity would prohibit Lannett from responding to a "complete response" letter from FDA.[9]  Sitlani told Kapoor that this issue was being considered and "needs further discussion with OCC and additional legal review."  His response was partly withheld under FOIA Exemption 5.  Then, in March 2018, Sitlani explained to Kapoor that he had discussed the issue with OCC, and "we are going to bring it to an Exclusivity Board meeting soon."[10]  In the following month, Kapoor asked Sitlani if the

---

interpretation is not, in fact, longstanding requires a brief rebuttal.  The interpretation Genus attacks is embodied in a regulation, 21 C.F.R. § 314.60(c), which has been in effect since 1994. *See id.*; *see also* ECF 30-1, Defs. Mem. at 32, *citing* 21 C.F.R. § 314.60(c).  An interpretation embodied in a regulation for over two decades is "longstanding" on its face, notwithstanding any preliminary agency discussions that may fail to acknowledge it as such.

[9] A complete response letter is a "written communication to an applicant from FDA usually describing all of the deficiencies that [FDA] has identified in an NDA or ANDA that must be satisfactorily addressed before it can be approved."  21 C.F.R. § 314.3(b). *See* ECF 30-1, Defs. Mem. at 9-10.

[10] FDA's Exclusivity Board provides "oversight and recommendations regarding exclusivity determinations made by CDER, with a primary focus on clarity and consistency of decisions." https://www.fda.gov/about-fda/center-drug-evaluation-and-research-cder/cder-exclusivity-board. Genus asserts that FDA convened the Board to address whether Genus's 5-year NCE exclusivity blocked Lannett from responding to FDA's complete response letter, but "no hint appears in FDA's administrative record of what issues or documents were before the Board, or what the Board ultimately decided."  ECF 54, Pl. Mot. at 5.  FDA, however, has informed Genus during discussions regarding FDA's production of the administrative record that the Exclusivity Board did not issue a recommendation regarding whether or how Genus's exclusivity would impact Lannett's drug.

12

Exclusivity Board had discussed the issue.  Sitlani replied that ORP was preparing a draft opinion for the Exclusivity Board, and that ORP did not believe Genus's 5-year NCE exclusivity would bar Lannett's response to the complete response letter, but explained that it "needs further discussion and vetting" by the Exclusivity Board.

The unredacted portions of this document consist merely of questions and status updates. There is no indication that this information was considered directly or indirectly by FDA decisionmakers in reaching any decision regarding Lannett's application.  Moreover, FDA's reasoning and conclusion that Genus's 5-year NCE exclusivity did not prevent Lannett from responding to FDA's complete response letter are extensively documented in the administrative record.  *See, e.g.*, ECF 52-8, JA 1911 (July 1, 2019 FDA response to Genus citizen petition), JA 2025 (January 10, 2020 FDA's response to Genus's second Citizen Petition).  To the extent this exchange reflects FDA's basis for its decision to accept Lannett's response, it is cumulative of materials already in the record and should not be added.

**FDACDER002443-24444** (May 30, 2018).  In this single-page email exchange, Jay Sitlani asked Shelly Kapoor if Lannett's application was "headed to a CR," meaning a complete response, and Kapoor confirmed that it was.  Kapoor also stated: "We may be able to extend the clock [*i.e.*, the period of time for FDA to decide whether to approve Lannett's application] if [Lannett] is able to submit" a summary report for its QT[11] study by July 20.  Kapoor then asked Sitlani if he "end[ed] up hearing back from the exclusivity board."  Sitlani responded that the

---

[11] QT-prolongation refers to a disturbance in how the heart's bottom chambers (ventricles) conduct electricity.  Mayo Clinic, Prolonged QT-interval, https://www.mayoclinic.org/diseases-conditions/long-qt-syndrome/multimedia/prolonged-q-t-interval/img-20007972 (last visited August 20, 2020).

Exclusivity Board was "in the process of clearing a memo to support any action by FDA
including (a) NDA approval on the PDUFA goal date; or (b) approval after a submission with the
QT study data."

Genus contends that this email demonstrates that FDA was "try[ing] to help Lannett
avoid Genus's exclusivity."  ECF 54, Pl. Mot. at 17.  As an initial matter, nothing in this email
suggests that Kapoor or Sitlani was trying to help Lannett.  Rather, Kapoor and Sitlani were
sharing updates about the status of Lannett's application, trying to anticipate the timing of
events, and recounting other, ongoing discussions in the agency.  Importantly, Genus fails to
explain how this exchange between a regulatory project manager and regulatory counsel was
relied upon by decisionmakers.  Thus, the Court should reject Genus's request to add this email
exchange to the administrative record.

**FDACDER002448-2452** (May 1, 2018-June 5, 2018).  The third document in Category 2
consists of a series of discussions between Kapoor and Mary Ann Holovac, a member of FDA's
"505(b)(2) committee," an internal FDA group which meets regularly to discuss questions that
arise about whether pending 505(b)(2) applications meet approval standards.  Genus focuses on a
June 5, 2018 email in which Holovac told Kapoor: "Please do not take action [on Lannett's
application] until the exclusivity memorandum is finalized."  This email does not support
Genus's theory that FDA "created [a] new interpretation in 2018-19 to justify accepting
Lannett's resubmission."  ECF 54, Pl. Mot. at 17.  Rather, this email shows that Holovac wanted
to ensure that any exclusivity-related documentation would be ready if and when FDA approved
Lannett's application.  *See* ECF 54-3, Pl. Ex. B at 15 (noting that the application would need to
be cleared again "if you are not approving this cycle").  This conversation was clearly related to
a possible approval of Lannett's application, not resubmission.  As to the question at issue here,

14

Genus does not explain how Holovac's instruction to Kapoor was considered in reaching a challenged decision.  Thus, this email exchange should not be added to the administrative record.

### C.  "Category 3" Emails

Third and finally, Genus seeks to add four emails to the record that, according to Genus, support its claim that FDA treated Genus and Lannett differently by applying a more lenient filing standard to Lannett's application.  ECF 54, Pl. Mot. at 18-21.  The Federal Defendants have responded to Genus's disparate treatment claim in their summary judgment briefing, and will not restate those arguments here.  *See* ECF 30-1, Defs. Mem. at 34-40; ECF 45, Fed. Defs. Reply at 19-25.  As explained below, these four emails are not part of the administrative record, and in any event, they do not support Lannett's claim.

**FDACDER000137-000138** (November 7, 2017).  Here, project manager Shelly Kapoor emailed Katy Rudnick, Manager for Regulatory Affairs at Lannett, asking Lannett to fill out information in a table.  The table includes a single line referring to "hepatic and renal impairment," among many others categories of information.  Genus claims that this email supports its disparate treatment argument on the merits by showing that "there is no indication in the FOIA production or the administrative record that Lannett ever supplied" FDA with hepatic impairment information for purposes of filing the application.  Aside from being irrelevant to the issue presented in Genus's Motion, Genus's assertion is incorrect.  As the Federal Defendants have explained, Lannett's submission of literature related to hepatic impairment, *see* ECF 52-5, JA 1366-1466, was sufficient to meet the filing standard.  ECF 45, Fed. Defs. Reply at 19, n.4, 21.

Like many of the prior emails, Genus does not argue that this email was considered, either directly or indirectly, by agency decisionmakers.  Nor could it have been.  Kapoor sent

Rudnick an empty table to complete; it did not contain any information that could have been relied upon in making a decision regarding Lannett's application. Thus, the Court should reject Genus's request to add this email to the record.

**FDACDER001281** (February 21, 2018). In this document, Shelly Kapoor wrote to several DAAAP personnel. At the end of her email, she mentioned a planned discussion of the labeling on Lannett's drug with respect to hepatic impairment. As with the prior email, Genus does not claim that Kapoor's statement—that certain FDA employees would discuss labeling for hepatic impairment—was considered by decisionmakers. Thus, the Court should deny Genus's request to add this email to the administrative record. And once again, Genus argues that this email supports its disparate treatment claim. Specifically, Genus suggests that because this labeling discussion occurred after FDA filed Lannett's application, FDA should not have filed Lannett's application in the first place. Genus's suggestion is incorrect. That the parties discussed labeling after FDA filed Lannett's application does not indicate whether the application met the filing standard. *See* ECF 30-1, Defs. Mem. at 34-38 (explaining that Genus inappropriately conflates the filing and approval standards).

**FDACDER002225-002226** (September 26, 2017). This is an email exchange among FDA personnel discussing the QT prolongation information that Lannett submitted with its application. Genus highlights a comment in the email chain that, "[i]f [Lannett] included something in the NDA submission, it is unlikely to be a filing issue but it will be a review issue." Deep Kwatra, a clinical pharmacology reviewer, responded that "adequacy of the QT evaluations in the Phase 3 will be a review issue but as long as something is there it is not a filing issue."

Yet again, instead of explaining why this document should have been in the administrative record, Genus argues that it supports its disparate treatment claim. Specifically, Genus suggests that FDA lowered the standard for Lannett's application in order to file it before FDA approved Genus's application. According to Genus, use of the word "something" in these emails must mean that either "FDA watered down its filing approach . . . , or FDA's approach is standardless." ECF 54, Pl. Mot. at 19. But Genus makes too much of the word "something." Lannett's application did not, after all, include "some piece of paper," *id.* at 21, in lieu of QT data; it included a subpopulation analysis of its Phase 3 study. As the Federal Defendants have explained, a subpopulation analysis was one of the options FDA provided to both Genus and Lannett as a means of meeting the QT information requirement. *See* ECF 30-1, Defs. Mem. at 36. Regardless, the Court should deny Genus's request to add this email exchange to the administrative record because Genus has not shown that it was considered, either directly or indirectly, by agency decisionmakers.

**FDACDER002248 – 002249** (September 27, 2017). In late September 2017, Kapoor asked Renee Petit-Scott, a Medical Officer in DAAAP, and Deep Kwatra if Lannett included a dedicated QT study in its application. They responded that Lannett instead performed a subpopulation analysis of the Phase 3 study. Ignoring the question of whether this document should be part of the administrative record, Genus claims that this email demonstrates that FDA should not have filed Lannett's application because it contained a subpopulation analysis instead of a Phase 3 QT study. Genus quotes Petit-Scott's statement that, "I noticed too that there was not a dedicated QT study and I am not sure why honestly." But Genus ignores the next two sentences: "But, depending on what their phrase 3 studies show and how extensive the QT analysis was, it may be ok. I agree that it probably won't be a filing issue but will be a review

17

issue."  This is consistent with the Federal Defendants' position in the summary judgment briefing that the filing standard is different than the approvability standard.  *See* ECF 30-1, Defs. Mem. at 34-39.  As such, these emails are all cumulative of information already in the record.

In short, Genus's attempt to use documents obtained in a separate FOIA production to strengthen its disparate treatment claim in this case should be rejected.  Genus has failed to meet its burden of showing that the Category 3 emails were considered, either directly or indirectly, by agency decisionmakers in making a determination about Lannett's application.  These emails should not be added to the administrative record.

## III.   This Court Should Not Review *In Camera* Emails Redacted in the FOIA Production

Genus asks this Court to conduct an *in camera* review of the redacted documents because it claims that information was inappropriately withheld pursuant to FOIA Exemption 5.  As a threshold matter, Latham—the party that submitted the FOIA request for documents and filed the FOIA action—should have raised the propriety of the exemptions in that case.  It did not. Latham also did not ask FDA to produce a *Vaughn* index describing the information exempted by FOIA.  The Court, therefore, cannot benefit from the information typically provided by a *Vaughn* index in considering Genus's argument that the documents were improperly redacted. Genus should not be permitted to challenge in this case FOIA exemptions that its counsel failed to challenge in the separate FOIA action.

Even if the exemptions could be challenged in this action, the Court should deny Genus's request to review the documents *in camera*.  District courts have substantial discretion in deciding whether to review FOIA documents *in camera*.  *Ctr. for Auto Safety v. E.P.A.*, 731 F.2d 16, 21 (D.C. Cir. 1984).  "[T]he ultimate criterion is simply . . . whether the district court believes that *in camera* inspection is needed in order to make a responsible de novo

18

determination on the claims of exemption." *DeFraia v. Central Intelligence Agency*, 311 F. Supp. 3d 42, 50 (D.D.C. 2018) (internal quotation marks omitted).  "But the mere possibility of error does not warrant *in camera* review."  *Id.*

Although Genus asks the Court to review all of the redactions *in camera*, it only argues that one of the documents was improperly redacted.  Specifically, Genus claims that FDA's redaction of Kapoor's explanation of a question posed by Sitlani, in the email chain labeled FDACDER002264-002265, is not protected by the deliberative-process privilege, or alternatively, that the deliberative-process privilege should be ignored because it discloses improper activity.  ECF 54, Pl. Mot. at 12-13.  Both arguments fail.  First, Genus claims that the redacted portion of Kapoor's email, where she recited a question from Sitlani, was not predecisional because it was "the substantive decision," and was not deliberative because Sitlani was "conveying an instruction."  Genus's characterization is flatly inconsistent with Kapoor's statement that Sitlani *asked* if something would be *possible*, and, by Roca's response that they "talk some more later."  FDACDER002264.  Moreover, Sitlani does not have the authority to instruct Roca, Deputy Director of DAAP, to take action—he is a Regulatory Counsel in ORP and his job is to advise and assist CDER.

Second, Genus argues that even if the redacted portion is deliberative, this Court should make an exception to the privilege because the communication would disclose "'improper' federal agency activity."  ECF 54, Pl. Mot. at 12-13. Genus's argument should be rejected.  As discussed earlier, *see supra* 11, this exchange simply reflects that a question was posed and Roca suggested that they discuss later—not that FDA took any improper action.  Additionally, information in the administrative record undermines Genus's argument and reveals that Genus's application was not ready for approval before FDA filed Lannett's application on November 20,

19

2017.  For example, on November 3, 2017, DAAAP requested certain information from Genus that was missing from its application.  Ex. C, AR 887 (Nov. 3, 2017 Email from Diana Walker to Melissa Goodhead).  Genus did not respond to this request until November 20th.  ECF 52-1 JA 240, 269 (Dec. 7, 2017 Pharmacology/Toxicology NDA Review and Evaluation). Additionally, the scientific reviews relating to Goprelto's safety and effectiveness were not finalized until December 2017.  *See, e.g.*, JA 240-456 (*id.*), JA 457-554 (Dec. 13, 2017 Clinical Review), JA 555-576 (Dec. 14, 2017 Cross-Discipline and Team Leader Review).  Genus and FDA also continued negotiating Goprelto's labeling into December.  *See* Ex. C, AR 914 (Nov. 30, 2017 email from FDA to Genus containing "edits and comments in response to your proposed labeling," and requesting a response by December 5, 2017); AR 1271 (Dec. 7, 2017 email from FDA to Genus asking Genus to "resubmit your draft labels"); AR 1253 (Dec. 12, 2017 email from FDA to Genus describing further labeling edits and asking for a response "*if at all possible by tomorrow, Wednesday, December 13, 2017, or as soon after that as possible*, so that we can keep the process moving as quickly as possible.") (emphasis in original).  In short, Genus's argument that the redaction in this document is not protected by the deliberative-process privilege is meritless.

Genus also asks the Court to review *in camera* the page marked FDACDER002449, but does not explain why it believes FDA's redaction was improper.  Genus does not even mention the other redacted pages or attempt to explain why the redactions are improper.  In short, Genus offers nothing more than a "mere possibility" of error, which does not warrant *in camera* review.

Finally, even if the Court reviews the redacted documents (or some subset of them) *in camera*, it should find that FOIA Exemption 5 was properly applied because the documents are protected by the deliberative-process privilege.  These documents reflect FDA's consultative

process of weighing the exclusivity issues that arose from this unusual circumstance, and they were generated before FDA reached any decisions regarding these issues.  As such, the documents easily satisfy the two prongs of the deliberative-process privilege.

## **CONCLUSION**

For the reasons stated above, the Federal Defendants respectfully request that the Court deny Genus's motion to complete the record and its request for the Court to review documents *in camera*.

Dated:  August 20, 2020                                   Respectfully submitted,


Of Counsel:

ROBERT P. CHARROW
U.S. Department of Health
and Human Services

STACY CLINE AMIN
Chief Counsel
Food and Drug Administration
Deputy General Counsel
U.S. Department of Health
and Human Services

ANNAMARIE KEMPIC
Deputy Chief Counsel, Litigation
Food and Drug Administration

MUSTAFA ÜNLÜ
Food and Drug Division, OGC
Office of the Chief Counsel, FDA
White Oak 31 Room 4428
10903 New Hampshire Ave.
Silver Spring, MD 20903
(301) 796-3396

ETHAN P. DAVIS
Acting Assistant Attorney General
Civil Division

DANIEL J. FEITH
Deputy Assistant Attorney General

GUSTAV W. EYLER
Director

HILARY K. PERKINS
Assistant Director

/s/ Kathleen B. Gilchrist
KATHLEEN B. GILCHRIST
D.C. Bar No. 230445
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044-0386
(202) 305-0489
Kathleen.b.gilchrist@usdoj.gov