IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENUS LIFESCIENCES, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> ALEX AZAR, et al., <br><br> *Defendants*, <br><br> LANNETT CO., INC. <br><br> *Intervenor-Defendant*. | Case No. 1:20-cv-00211-TNM |

**JOINT STATUS REPORT**

On September 15, 2020, the Court granted partial summary judgment to Plaintiff Genus Lifesciences, Inc. (Genus) on Count III of its Complaint, and held in abeyance its rulings on Counts I and II.  The Court then ordered Genus, Federal Defendants (Alex Azar, Secretary of Health and Human Services; U.S. Department of Health and Human Services; Stephen Hahn, Commissioner of Food and Drugs; and the U.S. Food and Drug Administration (FDA)), and Intervenor-Defendant Lannett Co., Inc. (Lannett) to "file a Joint Status Report addressing the appropriate remedy for Count III and recommending further proceedings, if any, for resolution of Counts I and II—and Plaintiff's Motion to Complete the Administrative Record—in light of the Court's Memorandum Opinion."  ECF No. 64.  The parties respectfully submit this Joint Status Report addressing the appropriate remedy for Count III.  The parties also herein address potential resolution of Counts I and II.  Genus also addresses Genus's pending Motion to Complete the Administrative record.

1

FDA and Lannett herein identify their intent to move for reconsideration of the Court's Opinion and Order (ECF Nos. 63 and 64), and propose a briefing schedule for such a motion.

1. Genus filed its three count Complaint on January 27, 2020. Count I alleged that FDA violated the Federal Food, Drug, and Cosmetic Act (FDCA) and Administrative Procedure Act (APA) when it accepted the filing of Lannett's application. ECF No. 1 ¶¶ 54-59 (Compl.). Count II alleged that FDA violated the FDCA and APA by allegedly allowing Lannett to resubmit its application in violation of Genus's alleged statutory right to New Chemical Entity Exclusivity, after FDA concluded that it could not approve Lannett's application pursuant to 21 C.F.R. § 314.110. *Id.* ¶¶ 60-69. And Count III alleged that FDA violated the FDCA and the APA when it approved Lannett's application on January 10, 2020. *Id.* ¶¶ 70-77.

2. On August 6, 2020, Genus filed a Motion to Complete the Administrative Record with 33 pages of documents obtained from FDA pursuant to the Freedom of Information Act. ECF No. 54.

3. On September 15, 2020, the Court issued a memorandum opinion concluding that FDA misapplied 21 U.S.C. § 355(c)(3)(E)(ii) and that the plain language of this provision and 21 U.S.C. § 355(c)(3) "make[] approval of a subsequent 505(b)(2) application effective based on that subsequent application's patent certification." ECF No. 63 at 26 ("Op."). Lannett submitted a subsequent Section 505(b)(2) application, but "Lannett did not submit a patent certification," and FDA "did not consider the timelines prescribed in [21 U.S.C. § 355(c)(3)] when it approved" Lannett's application. *Id.* at 21, 26. Accordingly, FDA "failed to provide a reasoned explanation to this Court for when Lannett's application could properly be approved under the FDCA." *Id.* at 26.

4. The Court granted summary judgment to Genus on Count III, and held Counts I and II of Genus's complaint in abeyance. ECF No. 64. The Court has not yet addressed Genus's Motion to Complete the Administrative Record.

5. The parties do not agree on the appropriate remedy for Count III or on how proceedings should continue in this case. The parties therefore state their separate positions below.

## **GENUS'S POSITION**

6. This Court held that "a patent certification is [not] an optional part of a 505(b)(2)" application, Op. at 20, noting FDA's regulatory requirements at 21 C.F.R. § 314.50(i)(1) requiring a patent certification. *See id.* at 20 (finding it "perplexing" that FDA argued that no patent certification requirement applies: "It is unclear why here in litigation FDA takes a position so clearly in opposition to its regulations."). Yet "Lannett did not submit a patent certification with its 505(b)(2) application." *Id.* at 20. Accordingly, FDA's approval of Lannett's application violated Section 505(b)(2) and FDA's regulations.

7. The plain text of the APA provides that courts should "*set aside*"—*i.e.*, vacate— unlawful agency action. 5 U.S.C. § 706; *United Steel v. MSHA*, 925 F.3d 1279, 1287 (explaining "the ordinary practice [under the APA] is to vacate unlawful agency action" and vacating for agency's failure to provide "reasoned explanation" for its action); *Sault Ste. Marie Tribe v. Bernhardt*, 442 F. Supp. 3d 53, 83 (D.D.C. 2020) (McFadden, J.) ("Since the [agency's] decision was not in accordance with law, the Court will vacate it."); *Nat'l Envtl. Dev. Ass'ns Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (vacating agency action in violation of its regulations). Here, FDA requests that the Court remand *without* vacatur, seeking to invoke the "rare" D.C. Circuit exception to the APA's clear text, *see United Steel*, 925 F.3d at 1287—or, in the alternative to hold that the FDA's failure to require a patent certification from Lannett was

3

"harmless error." But as the D.C. Circuit has held, remand without vacatur can only be appropriate if (1) it is "likely [that] the agency will be able to justify its decision on remand," and (2) vacatur would have "disruptive consequences." *Id.* That exception is inappropriate here for the same three reasons, as provided below, why the FDA's error was also not harmless.

8. **First**, FDA appears to believe that it can easily remedy the fundamental problem identified by the Court by simply allowing Lannett to submit a new patent certification to its approved drug application. But FDA's regulations mandate explicitly that an updated patent certification can only be submitted as an "amendment to a ***pending*** 505(b)(2) application." 21 C.F.R. § 314.50(i)(6) (emphasis added). For FDA to address the patent certification issue, it would be necessary both for Lannett's approval to be invalidated and for Lannett to make a *new* submission to FDA with an appropriate patent certification. So, unless FDA ignores its regulations again, FDA could not remedy the issue the Court has identified if the Court remands without vacatur. *See* Op. at 21 (*citing Nat'l Envtl. Dev. Ass'ns Clean Air Project v. EPA*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("It is axiomatic . . . that an agency is bound by its own regulations." (cleaned up))). This means that the D.C. Circuit's conditions for that rare remedy are not met here: it does not appear "likely" that FDA can justify its approval absent vacatur, and a vacatur would not have "disruptive consequences" because FDA cannot even attempt to remedy the problem unless Lannett's approval is undone. *United Steel*, 925 F.3d at 1287.[1]

---

[1] FDA regulations allow the agency to "withdraw" an approval under certain specified conditions, but those regulations do not appear to apply in these circumstances. *See* 21 C.F.R. § 314.150. And even if FDA could properly "withdraw" Lannett's approval through this process to allow Lannett to submit a patent certification, that would be no more disruptive than a vacatur—they would accomplish the same thing. Lannett is also incorrect to suggest that a vacatur would have disruptive consequences, as Genus anticipates it can meet any supply need in the market.

9.      **Second**, as Genus has argued throughout this case, FDA never should have accepted Lannett's application for filing, and so Lannett's approval was fatally flawed from the beginning. "FDA filed Lannett's application" a mere "15 days before approving Goprelto" (and granting Genus NCEE). Op. at 5. But in its rush to circumvent Genus's NCEE, FDA overlooked multiple facial defects in Lannett's application. *See* Genus MSJ at 16-21; Genus MSJ Reply at 32-40. At its filing review FDA "determines whether the application on its face includes all the required information." Op. at 3. A patent certification is part of the "required information" that *all* 505(b)(2) applications must submit. Op. at 21; 21 U.S.C. § 355(b)(2)(A); FDA MSJ at 8 (FDA refuses to file applications that are not "administratively complete") (citing agency guidance); *cf. id.* (agency will file applications where the identified issues are ones that "require in-depth review and complex judgments"). But unlike Genus, Lannett never submitted a patent certification. Op. at 21; JA1788 (showing Lannett submitted no patent certification). Lannett's application therefore lacked required information, was incomplete when filed, and could not have been appropriately accepted by the agency. *See* Op. at 21 ("It is . . . unclear on what basis FDA could justify accepting [Lannett's] application."). *And, because Genus's NCEE is now in effect, FDA cannot remedy this problem on remand by allowing Lannett to file a new, complete application.* *See* 21 C.F.R. § 314.101(e)(2) (providing that FDA "will refuse to file an NDA . . . if . . . [s]ubmission of a 505(b)(2) application . . . is not permitted under [the NCEE provision]"). For this reason, too, FDA's error was *not* harmless, and it is not likely that FDA will be able to re-justify its approval on remand.

10.     **Third**, FDA also seems to assume erroneously that its error is harmless, and that Lannett's application would be immediately approvable on remand, because Lannett could simply submit a "no relevant patents" certification pursuant to FDA's regulations and then be re-approved.

But *Genus currently has six active patents that are related to its product and its use* which are each listed in FDA's Orange Book (FDA's patent database).[2]  These patents were listed in the Orange Book starting on January 31, 2018, and include a product patent listed on April 15, 2019. As noted above, FDA did not properly accept Lannett's application prior to that time.  And, under FDA's regulations, an applicant also must update its patent certification under a range of circumstances to account for newly listed patents.  *See* 21 C.F.R. § 314.50(i)(6)(iii).  Statutory and regulatory patent certification requirements can apply when a drug application is initially submitted,[3] when a drug application is resubmitted (as Lannett did on June 21, 2019), *see* https://www.fda.gov/media/72649/download (form for original and resubmitted applications, showing at box 20 that applicant must "indicate patent certification"), and if and when Lannett seeks to submit a new patent certification to FDA following a vacatur.  Lannett will need to evaluate these issues before it submits a patent certification; FDA will need to address any certifications that Lannett submits to determine an appropriate approval date; and Genus may have specific statutory and regulatory rights following that process.  *See* 21 C.F.R. § 314.50(i)(6) (Lannett obligations to submit certifications); *id.* § 314.107(b)(1) (FDA provisions determining approval date based on certifications); 21 U.S.C. § 355(c)(3)(C) (Genus's right to statutory approval stay).  And, of course, FDA would also need to address whether any new certification by Lannett could even lawfully be made in light of Genus's New Chemical Entity Exclusivity (it

---

[2] *See* https://www.accessdata.fda.gov/scripts/cder/ob/patent_info.cfm?Product_No=001&Appl_No=209963&Appl_type=N.

[3] Indeed, Lannett should be required to refile its application to cure its failure to include a patent certification.  FDA's regulations would require Lannett to certify to Genus's patents because the two drugs are pharmaceutically equivalent.  21 C.F.R. §315.50(i)(1)(i)(C); 81 Fed. Reg. 69,580, 69,620 (Oct. 6, 2016) ("[W]e consider the 505(b)(2) applicant to implicitly rely upon FDA's finding of safety and effectiveness for one such pharmaceutically equivalent drug product for approval even if the proposed drug product was developed independently of that pharmaceutically equivalent drug product.").

cannot). *See* Genus MSJ at 22-29 (explaining how FDA's acceptance of Lannett's resubmitted application violated Genus's NCEE); Genus MSJ Reply at 5-22 (same). Thus, it is not at all clear, much less "likely" under the D.C. Circuit's remand without vacatur standard, that FDA could remedy these complicated issues on remand, and simply re-approve Lannett's application.

11.  For all these reasons, a vacatur should issue.[4] But if the Court declines to vacate, it should proceed to rule on the motion to complete the administrative record, which includes documents relevant to Counts I and II, and then fully adjudicate those Counts after supplemental briefing. A remand-without-vacatur disposition does not provide Genus the relief it is seeking. *See Am. Fed'n of Labor v. NLRB*, 2020 WL 3041384 at *21 n.13 (June 7, 2020).[5] Genus's five-year exclusivity is set to expire on December 14, 2022, and every day that Lannett's product remains on the market erodes irreparably Genus's statutory rights. *See Apotex, Inc. v. FDA*, 2006 WL 1030151, at *17 (D.D.C. Apr. 19, 2006) ("los[s] [of] a statutory entitlement . . . is a harm that has been recognized as sufficiently irreparable" because "[o]nce the statutory entitlement has been lost, it cannot be recaptured"); *Wondie v. Mekuria*, 742 F. Supp. 2d 118, 123 (D.D.C. 2010) (similar). Remand-without-vacatur dispositions also "sometimes invite[] agency indifference" to the problems the courts identify. *See In re Core Communications, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008) (Griffith, J., concurring). FDA would likely be even more tempted than normal to allow indifference to take hold because, if it prolongs its proceedings on remand, it could wait out Genus's NCEE period and potentially moot Genus's other claims. Finally, a remand-without-

---

[4] There would be no harm to the public interest from a vacatur. A vacatur would simply remove Lannett's product from the market and restore the well-functioning status quo ante where Genus's pharmaceutically equivalent product was serving patients.

[5] When a court determines that "an agency made an error of law" its inquiry as "at an end" regarding only how the agency may attempt to resolve that specific error. *See, e.g., PPG Industries, Inc. v. United States*, 52 F.3d 363, 365-66 (D.C. Cir. 1995). Here, the Court has not yet made any determination regarding Genus's Counts I and II.

vacatur disposition would be a waste of resources because, by requesting that remedy, FDA is indicating it will seek to re-affirm Lannett's approval, which would just return this case immediately to this Court for adjudication of Counts I and II.

12. Finally, Genus understands that FDA and Lannett intend to submit a motion for reconsideration, perhaps under Rule 54(b). Under that rule reconsideration may be appropriate if "the court 'patently' misunderstood a party, made a decision beyond the adversarial issues presented to the court, made an error in failing to consider controlling decisions or data, or . . . a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." *See Chapman v. IRS*, 2018 WL 2349519, at *1 (D.D.C. Apr. 19, 2018) (McFadden, J.). None of these circumstances is present here. Indeed, FDA's failure to follow the statutory and regulatory requirements for patent certifications is expressly relevant to each of Genus's claims in this case, Compl. ¶¶ 54-77, and the Court even invited supplemental briefing on the specific interaction between the patent certification requirements and NCEE. Op. at 5-6. Plainly, the question was subject to adversarial presentation and FDA and Lannett had every opportunity to ensure the Court did not "misunderstand" their position.

13. The Court should enter final judgment for Genus and issue a vacatur of Lannett's approval immediately, and if FDA and/or Lannett believe they can establish grounds to reconsider and/or stay that disposition, they can seek relief at the appropriate time.

## **FEDERAL DEFENDANTS' POSITION**

14. The Federal Defendants plan to file a Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 54(b), and respectfully request until October 21, 2020, to submit their Motion for Reconsideration.

15. In its Memorandum Opinion, this Court held that FDA made an error of law by not considering the timelines for approval prescribed in 21 U.S.C. § 355(c)(3) ("Paragraph 3") when it approved Numbrino. ECF No. 63 at 26. The Court's holding is premised on its determination that 21 U.S.C. § 355(b)(2) requires that *all* 505(b)(2) applications—including Lannett's—contain a patent certification. *Id.* at 20-21. The Federal Defendants intend to ask the Court to reconsider this determination.[6] A summary of the basis for Federal Defendants' Motion is set forth below.

16. In seeking approval for Numbrino, Lannett submitted a 505(b)(2) application to FDA, which FDA approved on January 10, 2020. The FDCA requires a 505(b)(2) application to include a patent certification only "*with respect to each patent* which [1] claims the drug for which such investigations [relied upon by the applicant] were conducted or which claims a use for such drug for which the applicant is seeking approval under this subsection *and* [2] for which information is required to be filed under paragraph (1) or subsection (c)." 21 U.S.C. § 355(b)(2) (emphasis added). Paragraph (1) and subsection (c) of 21 U.S.C. § 355(b) require new drug applicants to file information with FDA for patents that claim the drug or a method of using the drug for which the applicant has filed a new drug application. *Id.* at § 355(b)(1) & (c)(2). If there are no patents that satisfy both conditions enumerated above, 21 U.S.C. § 355(b)(2) does not require a patent certification.

17. In this case, there are no patents associated with drugs relied on by Lannett that satisfy the second condition in 21 U.S.C. § 355(b)(2). That is because Lannett's application relied on its own studies and published studies of *unapproved* drugs, for which patents may not be filed

---

[6] The Federal Defendants will also explain that the question of whether Lannett's application should have included a patent certification need not be addressed if the Court reconsiders its determination that "such an application" in the second sentence of 21 U.S.C. § 355(c)(3)(E)(ii) refers to all Section 505(b)(2) applications, not just those with a Paragraph IV certification.

9

with FDA.  It did not rely on any "listed drug," defined as a drug that has been approved by FDA in an NDA or ANDA, and for which approval has not been withdrawn for reasons of safety or effectiveness, 21 C.F.R. § 314.3(b), for which patents may be filed with FDA.  So, to the extent there may be patents associated with the drugs used in studies that Lanett relied on, those patents would not have been "required to be filed under paragraph (1) or subsection (c)."  *See* 21 U.S.C. § 355(b)(2).  Accordingly, because the second condition in 21 U.S.C. § 355(b)(2) for providing a patent certification was not satisfied, Lannett was not required to file a patent certification with its application.

18.     Assuming, then, that "such an application" in the second sentence of § 355(c)(3)(E)(ii) refers to all 505(b)(2) applications (as opposed to just those with a Paragraph IV certification), Lannett's application satisfied the requirement that "such an application shall be made effective in accordance with this paragraph."  Because Lannett was not required to file a patent certification, FDA did not err when it did not consider the timelines for approval in Paragraph 3 that apply only in cases where a 505(b)(2) applicant files a patent certification.

19.     The Federal Defendants' Motion for Reconsideration will further assert, in the alternative, that if the Court does not alter its determination that Lannett was required to submit a patent certification, then it should hold that FDA's failure to consider the timeline for approval associated with a patent certification was harmless.  *See* 5 U.S.C. § 706 (providing that, in reviewing agency action, "due account shall be taken of the rule of prejudicial error"); *Combat Veterans for Congress PAC v. Fed. Elec. Comm.*, 795 F.3d 151, 156-57 (D.C. Cir. 2015) (explaining that the harmless error rule requires the party asserting error to demonstrate prejudice from the error).  Had FDA required a patent certification from Lannett and considered the timeline associated with the patent certification, it would have approved Lannett's application

10

immediately—just as it did for Genus's application—because Lannett's application did not rely on any listed drug(s).

20. If the Court grants the Federal Defendants' Motion for Reconsideration on either ground, it should deny summary judgment to Genus on Count III, grant FDA's cross-motion for summary judgment on Count III, and proceed to consider the parties' cross-motions for summary judgment on Genus's Counts I and II. If the Court denies the Motion for Reconsideration, then the proper remedy would be to remand to FDA without vacatur because FDA could address the issue on remand and vacating FDA's approval of Numbrino would have disruptive consequences. *See Allied-Signal, Inc. v. Nuclear Regulatory Comm'n*, 988 F.3d 146, 150-41 (D.C. Cir. 1993).

## **LANNETT'S POSITION**

21. Lannett intends to respectfully request the Court reconsider its ruling on Count III, its determination that all 505(b)(2) applications must contain a certification under 21 U.S.C. § 355(b)(2), and its related determination that one of the timelines for approval under § 355(c)(3) must apply to any 505(b)(2) application. In the alternative, Lannett intends to respectfully request the Court reconsider its grant of partial summary judgment to Genus because any error by the agency was harmless error. Lannett proposes to file its Motion for Reconsideration on October 21, 2020.

22. As Lannett will explain more fully in its forthcoming motion for reconsideration, the FDCA only requires a patent certification of 505(b)(2) applicants when there were investigations of safety and efficacy conducted pursuant to a 505(b)(1) application upon which the 505(b)(2) applicant "relied. . . and for which the applicant has not obtained a right of reference or use from the person by or for whom the investigations were conducted," § 355(b)(2), and even then only when there is a "patent which claims the drug . . . or which claims a use for such drug

for which the applicant is seeking approval . . . and for which information is required to be filed under paragraph (1) or subsection (c),"[7] § 355(b)(2)(A).[8] Because Lannett's application did not rely on investigations from any 505(b)(1) application (it could not have; there was no 505(b)(1) application approved for cocaine hydrochloride), and there was not a patent filed with the FDA and listed on the appropriate list which claimed the drug or a use for such drug for which Lannett was seeking approval at the time of application submission, Lannett was not required to submit a patent certification under the FDCA.[9]

---

[7] Paragraph (1) and subsection (c) of § 355(b) require new drug applicants to file information with the FDA for patents that claim the drug or a method of using the drug for which the applicant has filed its new drug application. *See* § 355(b)(1), (c)(2).

[8] Similarly, FDA's regulations at 21 C.F.R. § 314.50(i)(1)(i) require a patent certification "*with respect to each patent* issued by the U.S. Patent and Trademark Office that, in the opinion of the applicant and to the best of its knowledge, claims the drug substance or drug product *on which investigations that are relied upon by the applicant for approval of its 505(b)(2) application* were conducted or that claims an approved use for such drug *and for which information is required to be filed* under section 505(b) and (c) of the Federal Food, Drug, and Cosmetic Act." 21 C.F.R. § 314.50(i)(1)(i) (emphasis added). The certification of "no relevant patent" provided for in § 314.50(i)(1)(ii) relates to when there is a patent issued by the U.S. Patent and Trademark Office that claims the drug substance or drug product but that it is not a *relevant* patent (*e.g.* because it was not relied upon or does not claim an approved use sought by the 505(b)(2) applicant). *See* § 314.50(i)(1)(ii) (requiring a certification that, "there are no patents that claim the drug or drugs *on which investigations that are relied upon in this 505(b)(2) application were conducted or that claim a use of such drug or drugs*") (emphasis added). *See Auer v. Robbins*, 519 U.S. 452, 461 (1997) (an agency interpretation of its own regulations is controlling unless "plainly erroneous or inconsistent with the regulation") (citation omitted).

[9] Lannett continues to assert that none of the timelines in § 355(c)(3) applied to the approval of Lannett's application. The timelines in § 355(c)(3)(A-C) apply to applications with patent certifications under § 355(b)(2)(A), and Lannett's application did not have any such patent certifications, as no such certifications applied. Moreover, § 355(c)(3)(D) does not contain a timeline for approval; Genus did not qualify for any of the approval exclusivities provided in § 355(c)(3)(E)(i, iii-v); and, § 355(c)(3)(E)(ii) did not contain a bar on approval of Lannett's application. Instead, the applicable time for approval in the statute is contained in § 355(c)(1), *i.e.*, "within 180 days," or such "additional time period as may be agreed upon by the Secretary and the applicant." While this deadline has been extended through subsequent FDA action, there is still a requirement to approve an application within a predetermined period of time. *See* Lannett Reply (Dkt. 43-1) at 8, n.5 (citing FDA, PDUFA REAUTHORIZATION PERFORMANCE GOALS AND

23. Should the Court not reconsider its determination or should the Court reach the same result upon reconsideration, Lannett respectfully submits that the proper remedy for this Court's grant of partial summary judgment to Genus is remand to the agency without vacatur. The decision whether to remand without vacatur is governed by the two-factor test explained by the D.C. Circuit in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993). The *Allied-Signal* test considers "the seriousness of the . . . deficiencies" and "the disruptive consequences of an interim change that may itself be changed." *Id.* at 150–51. Here, even if the Court does not reconsider its determination that Lannett was required to submit a patent certification under 355(b)(2), such omission from Lannett's application would be a mere technicality, given there was no patent upon which to certify within the meaning of 355(b)(2). As such, the deficiencies are not "serious," and the first *Allied-Signal* factor weighs in favor of remand without vacatur. The second factor, too, weighs in favor of remand without vacatur, because vacating FDA's approval of Lannett's application would cause immense disruptive consequences in the marketplace and to Lannett, given Lannett's Numbrino is currently in distribution channels and in use in the marketplace. Moreover, remand is appropriate because it is up to FDA to apply this Court's legal determinations: "Under settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *PPG Indus. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995); *see* Op. at 26 (quoting *PPG Indus.*).

---

PROCEDURES   FISCAL   YEARS   2018   THROUGH   2022,   4   (2016), https://www.fda.gov/media/99140/download).

24. Lastly, Lannett proposes the Court grant summary judgment on Counts I and II to FDA and Lannett, and deny summary judgment on Counts I and II to Genus, for the reasons stated in FDA and Lannett's briefs in support of their Motions for Summary Judgment and those stated in the Court's Opinion.

Dated: September 30, 2020

Respectfully submitted,

JEFFREY B. CLARK
Acting Assistant Attorney General
Civil Division

DANIEL J. FEITH
Deputy Assistant Attorney General

GUSTAV W. EYLER
Director

HILARY K. PERKINS
Assistant Director

/s/ Kathleen B. Gilchrist
KATHLEEN B. GILCHRIST
D.C. Bar No. 230445
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice, Civil Division
P.O. Box 386
Washington, D.C. 20044-0386
(202) 305-0489
Kathleen.b.gilchrist@usdoj.gov

*Attorneys for Federal Defendants*

s/ Philip J. Perry
Philip J. Perry (DC Bar No. 434278)
John R. Manthei (DC Bar No. 447123)
Andrew D. Prins (DC Bar No. 998490)
Ryan S. Baasch (DC Bar No. 144370)
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, DC 20004
Tel.: (202) 637-2200
Fax: (202) 637-2201
Email: philip.perry@lw.com

*Attorneys for Plaintiff*

/s/ Lori A. Rubin
Lori A. Rubin, DC Bar No. 1004240
David A. Hickerson, DC Bar No. 414723
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
(202) 672-5300
dhickerson@foley.com
larubin@foley.com

*Attorneys for Intervenor-Defendant Lannett Co., Inc.*