IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENUS LIFESCIENCES, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>ALEX AZAR et al,<br><br>    Defendants,<br><br>LANNETT CO., INC.<br><br>    Intervenor-Defendant. | Case No. 1:20-cv-00211-TNM |

**PLAINTIFF GENUS LIFESCIENCES, INC.'S MOTION TO VACATE**

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Action on Smoking & Health v. CAB*,
    713 F.2d 795 (D.C. Cir. 1983) ................................................................................................1

*AFL-CIO v. Chao*,
    496 F. Supp. 2d 76 (D.D.C. 2007) ..........................................................................................4

*Am. Great Lakes Ports v. Schultz*,
    962 F.3d 510 (D.C. Cir. 2020) ................................................................................................3

*Am. Petroleum Inst. v. SEC*,
    953 F. Supp. 2d 5 (D.D.C. 2013) ............................................................................................6

*Am. Soc. of Dermatology v. Shalala*,
    962 F. Supp. 141 (D.D.C. 1996) .............................................................................................9

*Apotex, Inc. v. FDA*,
    2006 WL 1030151 (D.D.C. Apr. 19, 2006) ............................................................................9

*Astrazeneca Pharm. v. Burwell*,
    197 F. Supp. 3d 53 (D.D.C. 2016) ........................................................................................10

*Brotherhood of Locomotive Eng'rs v. FRA*,
    972 F.3d 83 (D.C. Cir. 2020) ..................................................................................................3

*Cement Kiln Recycling Coal. v. EPA*,
    255 F.3d 855 (D.C. Cir. 2001) ................................................................................................4

*Checkosky v. SEC*,
    23 F.3d 452 (D.C. Cir. 1994) ..................................................................................................2

*City of Erie v. Pap's A.M.*,
    529 U.S. 277 (2000) ..............................................................................................................10

*Clark Cnty., Nev. v. FAA*,
    522 F.3d 437 (D.C. Cir. 2008) ................................................................................................2

*In re Core Commc'ns, Inc.*,
    531 F.3d 849 (D.C. Cir. 2008) .........................................................................................2, 10

*FCC v. NextWave Pers. Commc'ns Inc.*,
    537 U.S. 293 (2003) ................................................................................................................2

*Hi-Tech Pharmacal Co. v. FDA*,
   587 F. Supp. 2d 1 (D.D.C. 2008) ................................................................................................9

*Johnson v. Copyright Royalty Bd.*,
   969 F.3d 363 (D.C. Cir. 2020) ....................................................................................................2

*Mfrs. Ry. Co. v. Surface Transp. Bd.*,
   676 F.3d 1094 (D.C. Cir. 2012) ..................................................................................................2

*Milk Train, Inc. v. Veneman*,
   310 F.3d 747 (D.C. Cir. 2002) ....................................................................................................2

*Nat. Res. Def. Council v. EPA*,
   489 F.3d 1250 (D.C. Cir. 2007) ..................................................................................................4

*Nat'l Fuel Gas Supply Corp. v. FERC.*,
   468 F.3d 831 (D.C. Cir. 2006) ....................................................................................................2

*NTCH, Inc. v. FCC*,
   950 F.3d 871 (D.C. Cir. 2020) ....................................................................................................6

*Otay Mesa Prop. v. U.S. Dep't of Interior*,
   646 F.3d 914 (D.C. Cir. 2011) ....................................................................................................2

*PAM Squared at Texarkana, LLC v. Azar*,
   436 F. Supp. 3d 52 (D.D.C. 2020) ..............................................................................................8

*Teva Pharm., Inc. v. FDA*,
   441 F.3d 1 (D.C. Cir. 2006) ........................................................................................................1

*United Steel v. MSHA*,
   925 F.3d 1279 (D.C. Cir. 2019) ..........................................................................................2, 3, 8

*Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*,
   435 U.S. 519 (1978) ....................................................................................................................2

*Wondie v. Mekuria*,
   742 F. Supp. 2d 118 (D.D.C. 2010) ............................................................................................9

*Zen Magnets, LLC v. Consumer Prod. Safety Comm'n*,
   841 F.3d 1141 (10th Cir. 2016) ..................................................................................................2

**STATUTES**

5 U.S.C § 706(2) ................................................................................................................................1

21 U.S.C.
    § 355(b)(2)(A) ........................................................................................................................3
    § 355(c)(3)(C) ........................................................................................................................7
    § 355(d) ..................................................................................................................................8
    § 355(e) ..................................................................................................................................8

## REGULATIONS

21 C.F.R.
    § 314.3 ....................................................................................................................................7
    § 314.3(b) ...............................................................................................................................5
    § 314.50(i)(1)(i)(A) ................................................................................................................7
    § 314.50(i)(6) .....................................................................................................................3, 7
    § 314.50(i)(6)(iii) ...................................................................................................................6
    § 314.107(b)(1) ......................................................................................................................7
    § 314.110 ................................................................................................................................5
    § 314.125 ................................................................................................................................8
    § 315.50(i)(1)(i)(C) ................................................................................................................7

81 Fed. Reg. 69,580 (Oct. 6, 2016) ................................................................................................7

## OTHER AUTHORITIES

FDA, CPG Sec. 120.100 Fraud, Untrue Statements of Material Facts, Bribery, and Illegal
    Gratuities (1991), https://www.fda.gov/regulatory-information/search-fda-guidance-
    documents/cpg-sec-120100-fraud-untrue-statements-material-facts-bribery-and-illegal-
    gratuities ................................................................................................................................9

FDA, Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations
    https://www.accessdata.fda.gov/scripts/cder/ob/patent_info.cfm?Product_
    No=001&Appl_No=209963&Appl_type=N ........................................................................6

Form FDA 356h, https://www.fda.gov/media/72649/download ....................................................5

**MOTION TO VACATE**

In this Court's September 15, 2020 Order, the Court granted summary judgment to Genus on Count III of its Complaint and ordered the parties to provide their views about the appropriate remedy. ECF No. 64; *see also* October 7, 2020 Minute Entry (ordering Genus to file its motion to vacate by October 16, 2020). Because the only appropriate remedy is a vacatur, Genus urges the Court to vacate Lannett's approval immediately. FDA's proposed alternative—remand-without-vacatur—is inconsistent with this Circuit's precedents and could effectively extinguish Genus's Counts I and II without any judicial ruling.

The plain language of the Federal Food, Drug, and Cosmetic Act (FDCA) "makes approval of a subsequent 505(b)(2) application effective based on that subsequent application's patent certification." ECF No. 63 at 26 ("Op."). Lannett submitted a subsequent Section 505(b)(2) application, but "Lannett did not submit a patent certification," and FDA "did not consider the timelines prescribed" in the statute when it approved Lannett's application. *Id.* at 21, 26. FDA therefore misapplied the FDCA's approval provision, and "failed to provide a reasoned explanation to this Court for when Lannett's application could properly be approved under the FDCA." *Id.* at 26. In other words, Lannett failed to follow the FDCA's mandatory requirements when it submitted its 505(b)(2) application, and FDA unlawfully approved it anyway.

The text of the Administrative Procedure Act (APA) is clear: "The reviewing court shall . . . **set aside** agency action, findings, and conclusions found to be" "arbitrary," "capricious," or "otherwise not in accordance with law." 5 U.S.C § 706(2) (emphasis added); *see also Action on Smoking & Health v. CAB*, 713 F.2d 795, 797 (D.C. Cir. 1983) ("To vacate . . . means to . . . set aside."). Consistent with the presumptive remedy in APA cases and the only one provided for in the APA's text, Lannett's approval must be vacated. *See e.g.*, *Teva Pharm., Inc. v. FDA*, 441 F.3d 1, 5 (D.C. Cir. 2006) ("[A]n order may not stand if the agency has misconceived the law.");

1

*Johnson v. Copyright Royalty Bd.*, 969 F.3d 363, 392 (D.C. Cir. 2020) ("We **must** vacate the [agency action] and remand for the [agency] either to provide a fuller explanation of the agency's reasoning at the time of the agency action or to take new agency action accompanied by the appropriate procedures." (emphasis added) (alterations omitted)); *Mfrs. Ry. Co. v. Surface Transp. Bd.*, 676 F.3d 1094, 1097 (D.C. Cir. 2012) (Kavanaugh, J.) ("[T]he [agency] failed to reasonably explain and justify [its decision] . . . . Under the APA, the [agency's] decision is therefore arbitrary and capricious. ***We must vacate*** the [agency's] decision." (emphasis added)).[1]

FDA and Lannett have proposed the extraordinary remedy of remand-without-vacatur. Joint Status Report ¶¶ 20, 23, ECF No. 65.  Courts in this Circuit have occasionally entertained a remand-only disposition, but that remedy has always "rest[ed] on thin air." *Checkosky v. SEC*, 23 F.3d 452, 490 (D.C. Cir. 1994) (Randolph, J., separate op.).  "No statute governing judicial review of agency action permits [remand-without-vacatur] and the [text of the APA] flatly prohibits it." *Id.*[2]  And it appears to be in tension with Supreme Court precedent.  *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) ("The Administrative Procedure Act **requires** federal courts to **set aside** federal agency action that is not in accordance with law." (emphasis added)); *Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 549 (1978). Accordingly, remand-without-vacatur is "rare[ly]" granted, *see United Steel v. MSHA*, 925 F.3d

---

[1] *See also, e.g.*, *Clark Cnty., Nev. v. FAA*, 522 F.3d 437, 443 (D.C. Cir. 2008) (similar); *Nat'l Fuel Gas Supply Corp. v. FERC.*, 468 F.3d 831, 834 (D.C. Cir. 2006) (similar); *Otay Mesa Prop. v. U.S. Dep't of Interior*, 646 F.3d 914, 918-19 (D.C. Cir. 2011) (similar); *Zen Magnets, LLC v. Consumer Prod. Safety Comm'n*, 841 F.3d 1141, 1144 (10th Cir. 2016) (Ebel & Gorsuch, JJ.) (finding agency's factual findings "incomplete and inadequately explained"; "Accordingly, we **VACATE** and REMAND to the [agency]." (emphasis added)).

[2] *See also Milk Train, Inc. v. Veneman*, 310 F.3d 747, 757 (D.C. Cir. 2002) (Sentelle, J. dissenting) ("[T]he APA states . . . in the clearest possible terms [that] a reviewing court faced with an arbitrary and capricious decision *shall* hold unlawful and set aside the agency action." (cleaned up)); *cf. In re Core Commc'ns, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008) (Griffith, J., concurring) (recognizing "disputed legality of remand without vacatur").

2

1279, 1287 (D.C. Cir. 2019), and only in "exceptional" circumstances, *Am. Great Lakes Ports v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020); *Brotherhood of Locomotive Eng'rs v. FRA*, 972 F.3d 83, 117 (D.C. Cir. 2020) ("Vacatur is the normal remedy when we are faced with unsustainable agency action."). A remand-without-vacatur would be inappropriate here for at least five reasons.

**1.** To start, as a matter of pure mechanics, Lannett's existing application cannot remain approved under any circumstance. Regardless of what else happens, it is clear that Lannett must submit a patent certification before its application can be properly approved. Op. at 21, 26. But the statute and FDA's regulations *prohibit* Lannett from submitting a patent certification to an *approved* application. Under the statute, patent certifications must be filed when the "applicant is *seeking* approval"—not after its application has been approved. 21 U.S.C. § 355(b)(2)(A) (emphasis added); *see also* 21 C.F.R. § 314.50(i)(6) (updates must be submitted as "amendment to a *pending* 505(b)(2) application"—not an approved one (emphasis added)). For FDA to address the patent certification issue, it would be necessary for Lannett to make a *new* submission to FDA with an appropriate patent certification to a *pending* (unapproved) application. If the approval is not vacated, then *FDA* would still have to somehow rescind Lannett's approval in order to allow a patent certification to be made—in either case, the existing approval goes away. For that reason alone, vacatur is warranted.[3] *See United Steel*, 925 F.3d at 1287 (indicating remand-without-vacatur should only be considered if, *inter alia*, vacatur would have "disruptive consequences").

**2.** Genus identified multiple other defects with FDA's approval of Lannett's application in Counts I and II of its Complaint. This, too, strongly weighs in favor of vacatur: "The D.C. Circuit has . . . suggested that, where a reviewing court has invalidated [agency action]

---

[3] In addition, there is no colorable argument that pulling Lannett from the market would result in disruptive consequences. That action would simply restore the well-functioning status quo ante where Genus's pharmaceutically equivalent product was serving patients.

3

without reaching additional 'potentially meritorious challenges' to it, vacatur is the appropriate remedy." *AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 93 (D.D.C. 2007) (quoting *Nat. Res. Def. Council v. EPA,* 489 F.3d 1250, 1261 (D.C. Cir. 2007) (vacating rule)); *see also Cement Kiln Recycling Coal. v. EPA,* 255 F.3d 855, 872 (D.C. Cir. 2001). Genus's other claims were "potentially meritorious" when filed, but are even *stronger* now in light of FDA's and Lannett's admissions that Lannett never filed a patent certification.

In Count I, Genus alleged that FDA violated the FDCA and APA when it watered down its filing standard to accept Lannett's incomplete application a mere 15 days before Genus's NCEE took effect.[4]  Compl. ¶¶ 54-59.  Now it is apparent that the application was incomplete for yet another reason—it lacked the patent certification required by 505(b)(2).[5]  *See* Op. at 20 ("[A] patent certification is [not] an optional part of a 505(b)(2)" application).  And—although FDA's refuse to file approach is opaque and arbitrary—even on its own terms it is clear that a failure to include *any* information on this basic requirement should have resulted in a refusal to file.  Op. at 3 (noting that, at the filing stage, FDA "determines whether the application on its face includes all the required information"); FDA MSJ at 8 (FDA refuses to file applications that are not "administratively complete") (citing agency guidance); *cf. id.* (agency will file applications where the identified issues are ones that "require in-depth review and complex judgments").  Thus, FDA should have rejected Lannett's filing.  *See* Op. at 21 ("It is . . . unclear on what basis FDA could justify accepting [Lannett's] application.").  And any subsequent submission by Lannett of an

---

[4] FDA's central defense in this case is that it did not violate Genus's NCEE because FDA accepted Lannett's application days prior to approving Genus's.  But documents obtained through FOIA that are currently the subject of Genus's Motion to Complete the Record indicate that FDA intentionally delayed Genus's approval to allow Lannett's application to be filed first.  ECF No. 54.

[5] FDA did not include Lannett's original or resubmitted applications in the administrative record.

application would have been blocked by Genus's NCEE, even under FDA's interpretation of the NCEE provision. FDA MSJ Reply at 1 ("It is undisputed that Genus's drug Goprelto (cocaine hydrochloride) has 5-year [NCEE] and, in accordance with [the FDCA], FDA will not accept the submission of any 505(b)(2) application for a drug containing cocaine until December 2022.").

Similarly, in Count II, Genus alleged that FDA violated the FDCA and APA by allowing Lannett to resubmit its application in violation of Genus's statutory NCEE, after FDA concluded that it could not approve Lannett's application pursuant to 21 C.F.R. § 314.110. Compl. ¶¶ 60-69. Genus has explained that the plain statutory and regulatory text governing exclusivity prohibited FDA from accepting a resubmission of Lannett's application. *See* Genus MSJ at 22-29. The text of the NCEE provision at issue provides that "no application" may be "submitted" for a five year period. Paralleling that text, the relevant regulations at 21 C.F.R. §§ 314.3 and 314.110 make clear that a "resubmission" of "an application" following a CRL is a "submission" of an "application." 21 C.F.R. § 314.3(b); *id*. § 314.110. Thus, Lannett's resubmitted application should have been blocked by Genus's NCEE.

FDA's decision to allow Lannett to resubmit despite Genus's exclusivity was even more egregious in light of the revelation that Lannett filed no patent certification. Because a "patent certification is [not] an optional part of a 505(b)(2)" application, Op. at 20, *at the very latest* Lannett's resubmitted application—the one that was ultimately approved by FDA—needed to have such a certification. *See* Form FDA 356h, https://www.fda.gov/media/72649/download (form for original and resubmitted applications, showing at box 20 that applicant must "indicate patent certification"). Yet it did not, providing yet another reason—aside from Genus's NCEE—that FDA should have rejected or denied that resubmitted application.

"[B]ecause the Court has not addressed [Genus's] other challenges, questions remain about other aspects of the [agency's order]." *Am. Petroleum Inst. v. SEC*, 953 F. Supp. 2d 5, 25 (D.D.C. 2013).  Vacatur is therefore warranted.  *See supra* at 3-4 (collecting cases).

**3.**     There are also a number of complex issues resulting from Lannett's failure to make a patent certification that both FDA and Lannett will need to grapple with following a vacatur.  Vacating is consistent with sound principles of administrative law and judicial restraint, because it will allow FDA to address these issues in the first instance and, depending on what FDA does, may even make judicial resolution of Genus's Counts I and II unnecessary.  *See NTCH, Inc. v. FCC*, 950 F.3d 871, 884 (D.C. Cir. 2020) ("We … vacate the [FCC's] order . . . But because the [FCC] never reached [a specific question], neither shall we.  Having concluded that the [FCC] erred in its threshold analysis, we remand to the agency for additional investigation or explanation.").  For example, if FDA determines that, in light of this Court's opinion, FDA should have refused to file the original application under its filing standard, Genus's NCEE would indisputably prevent Lannett from submitting a new application until December 14, 2022, making judicial resolution of Genus's Counts I and II unnecessary.

In addition, although Genus did not have patents when Lannett *first* submitted its application, it had *multiple* active patents listed in FDA's Orange Book (FDA's patent database) by the time of Lannett's resubmission, and has six active patents now.[6]  Those patents were listed in the Orange Book starting on January 31, 2018, they include a product patent listed on April 15, 2019, and they do not expire until 2037.  Under FDA's regulations, an applicant must update its patent certifications under a range of circumstances to account for newly listed patents.  *See* 21

---

[6] *See* FDA, Orange Book: Approved Drug Products with Therapeutic Equivalence Evaluations https://www.accessdata.fda.gov/scripts/cder/ob/patent_info.cfm?Product_No=001&Appl_No=209963&Appl_type=N.

C.F.R. § 314.50(i)(6)(iii). And those regulations provide that a patent certification must address any patents that claim the "drug product" or "drug substance" for which investigations were conducted that the subsequent 505(b)(2) applicant is relying on. *See* 21 C.F.R. § 314.50(i)(1)(i)(A). It should be factually indisputable that Genus has at least one "drug product" patent, as well as multiple other patents that claim the "drug substance" (cocaine hydrochloride) for which investigations were conducted that Lannett's application relied on.

If and when Lannett seeks to submit a new patent certification to FDA following a vacatur, Lannett will need to evaluate these issues before it submits a patent certification; FDA will need to address any certifications that Lannett submits to determine an appropriate approval date; and Genus may have specific statutory and regulatory rights following that process. *See* 21 C.F.R. § 314.50(i)(6) (Lannett obligations to submit certifications); *id.* § 314.107(b)(1) (FDA provisions determining approval date based on certifications); 21 U.S.C. § 355(c)(3)(C) (Genus's right to statutory approval stay).[7] And, of course, FDA would also need to address whether any new certification by Lannett could even lawfully be made in light of Genus's NCEE (it cannot). *See* Genus MSJ at 22-29 (explaining how FDA's acceptance of Lannett's resubmitted application

---

[7] FDA or Lannett may argue that Lannett is exempt from certifying as to Genus's patents because Lannett did not rely on investigations that were conducted for Genus. But that would be wrong in multiple respects. First, the regulation governing certification does not recognize this distinction. 21 C.F.R. § 314.50(i)(1)(i)(A). Second, as a matter of law Lannett's application ***did*** rely on Genus's investigations because its product is pharmaceutically equivalent to Genus's, and because FDA considers a subsequent pharmaceutically equivalent product to rely on investigations from a previously approved one, regardless of whether the subsequent application specifies that reliance as a matter of fact. *See* 21 C.F.R. § 315.50(i)(1)(i)(C); 81 Fed. Reg. 69,580, 69,620 (Oct. 6, 2016) ("[W]e consider the 505(b)(2) applicant to implicitly rely upon FDA's finding of safety and effectiveness for one such pharmaceutically equivalent drug product for approval even if the proposed drug product was developed independently of that pharmaceutically equivalent drug product."); 21 C.F.R. § 314.3 (defining pharmaceutical equivalence). And third, when approving Lannett's application FDA ***actually*** relied on Genus's investigations. *See* Genus MSJ Reply at 21-22 & n.5.

7

violated Genus's NCEE); Genus MSJ Reply at 5-22 (same). Thus, it is not at all clear, much less "likely" under the D.C. Circuit's remand-without-vacatur standard, *United Steel*, 925 F.3d at 1287, that FDA could remedy these complicated issues and simply re-approve Lannett's application.[8]

**4.** There is an additional reason, too, why it is not at all clear that FDA could or would re-approve Lannett even if FDA disagrees with everything else Genus has argued throughout this case. After the filing of this lawsuit, Genus identified—and later confirmed through FOIA—what Genus believes to be a material untrue statement in Lannett's submissions to FDA. Specifically, a critical part of the assessment of any new drug application is FDA's evaluation of the facility in which the drug will be manufactured. 21 U.S.C. § 355(d); 21 C.F.R. § 314.125. Genus has presented evidence to FDA over recent months that Lannett's application falsely stated that its drug would be manufactured at a facility in Cody, Wyoming (and the Chemistry, Manufacturing and Control section reviewed and relied upon by FDA as the basis for approval was thus from the Cody, Wyoming facility), when in reality Lannett had shuttered that facility and moved its manufacturing operations to Carmel, New York. These material untrue statements should have prompted FDA to withdraw Lannett's approval on its own, as the FDCA required it to do. *See* 21 U.S.C. § 355(e). And if Lannett's approval is vacated, then pursuant to longstanding FDA policy, the agency should, at a minimum, require Lannett to submit "a new application":

> When FDA finds, based on fraudulent data in an application, that the data in the application are unreliable, the agency intends ordinarily to exercise its authority, under applicable

---

[8] For similar reasons FDA also would not be able to argue that its failure to require a patent certification was "harmless error." As this Court has recognized, harmless error in an APA case is a merits inquiry that might save an agency action from being found arbitrary and capricious—it is not part of the determination of a proper remedy. *See PAM Squared at Texarkana, LLC v. Azar*, 436 F. Supp. 3d 52, 59-61 (D.D.C. 2020) (McFadden, J.). And here, the Court has already concluded on the merits that FDA's decision violated the APA. In addition, "harmless error" is limited to relatively trivial mistakes, such as a "wrong citation or clerical error" in the agency's decision. *Id.* at 60. Here, the agency's errors were much more substantial and had much greater impacts, as demonstrated *supra*.

> statutes and regulations, to refuse to approve the application (in the case of a pending application) …. regardless of whether the applicant attempts to replace the unreliable data with a new submission in the form of an amendment or supplement. Thus, if the applicant wishes to replace the false data with a new submission, the new submission should be in the form of a new application. The new application should identify the parts of the original application that were found to be false. The truthfulness and accuracy of the new application should be certified by the president, chief executive officer, or other official most responsible for the applicant's operations.

CPG § 120.100.[9] Thus, after vacatur, FDA should require Lannett to submit a new application for reasons entirely aside from those presented in this case, again potentially eliminating the need for a judicial resolution of Claims I and II. And, of course, a new application would be barred by Genus's NCEE until at least December 14, 2022.

5.  Finally, a remand-without-vacatur remedy on Count III would be inappropriate because it would be highly inequitable and prejudicial to Genus. *Cf. Am. Soc. of Dermatology v. Shalala*, 962 F. Supp. 141, 146 (D.D.C. 1996) (equitable remedies should not result in material harm). That disposition would effectively leave Genus *worse off* than if it had not received summary judgment on Count III. Genus has already been deprived of its statutory exclusivity for nine months (29 months, if the period where FDA permitted Lannett to sell its unapproved product after Genus's approval is counted, *see* Genus MSJ at 10-11 n.6), and has only 26 months remaining on that exclusivity. The loss of that statutory entitlement is well recognized in this Circuit to be irreparable harm. *See Hi-Tech Pharmacal Co. v. FDA*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008) (stating "[o]nce the statutory entitlement has been lost, it cannot be recaptured" (quoting *Apotex, Inc. v. FDA*, 2006 WL 1030151, at *17 (D.D.C. Apr. 19, 2006))); *Wondie v. Mekuria*, 742 F. Supp. 2d 118, 123 (D.D.C. 2010) (similar). FDA would be able to further erode Genus's exclusivity

---

[9] FDA, CPG Sec. 120.100 Fraud, Untrue Statements of Material Facts, Bribery, and Illegal Gratuities (1991), https://www.fda.gov/regulatory-information/search-fda-guidance-documents/cpg-sec-120100-fraud-untrue-statements-material-facts-bribery-and-illegal-gratuities.

simply by taking its time on remand, while Genus's meritorious Count I and Count II claims remain unresolved.  *See In re Core Commc'ns*, 531 F.3d at 862 (Griffith, J., concurring) (observing that remand-without-vacatur dispositions "sometimes invite[] agency indifference").  This could effectively extinguish Counts I and II without any judicial ruling; FDA could even potentially *moot* those claims by simply declining to act before December 14, 2022.  *Cf. City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000) (expressing judicial "interest in preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review"); *Astrazeneca Pharm. v. Burwell*, 197 F. Supp. 3d 53, 56 (D.D.C. 2016) ("Astrazeneca should have some opportunity to present its arguments to the Court before it suffers an irretrievable loss of six months or more of exclusivity.").

* * * * *

For all these reasons, the Court should vacate Lannett's approval and remand the matter to FDA for further proceedings consistent with this Court's September 15, 2020 opinion.  If the Court is disinclined to vacate, however, it should at a minimum proceed to decide Genus's motion to complete the administrative record and then fully adjudicate Counts I and II.  Any other result would materially prejudice Genus and would be inconsistent with this Circuit's precedents.

Respectfully submitted,

Dated: October 16, 2020

s/ Philip J. Perry
Philip J. Perry (DC Bar 434278)
John R. Manthei (DC Bar 477123)
Andrew D. Prins (DC Bar 998490)
Ryan S. Baasch (DC Bar 144370)
Monica C. Groat (DC Bar 1002696)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
Tel: (202) 637-2200

                                Fax: (202) 637-2201
                                Email: andrew.prins@lw.com
                                *Attorneys for Plaintiff Genus Lifesciences, Inc.*