**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GENUS LIFESCIENCES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| ALEX AZAR, et al., | ) ) Case No. 1:20-cv-00211-TNM |
| Defendants, | ) ) ) |
| v. | ) ) |
| LANNETT CO., INC., | ) ) |
| Intervenor-Defendant. | ) ) |

**INTERVENOR-DEFENDANT LANNETT CO., INC.'S
MOTION FOR RECONSIDERATION AND
<u>OPPOSITION TO MOTION FOR VACATUR</u>**

i

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. DISCUSSION ................................................................................................................. 2

    A. The Standard is Met for Reconsideration. ......................................................... 2

    B. Lannett Was Not Required to Submit a Patent Certification. ........................... 2

        1. The FDCA Does Not Require Patent Certifications Absent Any Patents. ................................................................................................. 2

        2. Sentence 2's Reference to "Such an Application" Does Not Mandate a Different Construction. .......................................................... 4

        3. FDA's Interpretation of the FDCA and Regulations. ............................ 5

    C. If a Patent Certification Was Required, FDA's Acceptance and Approval of Lannett's Application Without a Patent Certification was Harmless Error. ................................................................................................... 5

    D. If a Patent Certification Was Required, and This Court Declines to Find Harmless Error, the *Allied-Signal* Factors Show Remand Without Vacatur is Appropriate. ........................................................................ 6

        1. Any Deficiency Was Not Serious and Could be Remedied on Remand. .................................................................................................. 6

        2. Vacatur Would Lead to Disruptive Consequences. ............................... 8

    E. Genus's Arguments Are Contrary to the Law of This Circuit. ......................... 9

    F. Each of Genus's Reasons Arguing for Vacatur Fails. ..................................... 11

    G. Should this Court Remand with Vacatur, Lannett Requests that the Court First Allow the Agency Time to Act. ..................................................... 14

III. CONCLUSION ............................................................................................................. 15

# **TABLE OF AUTHORITIES**

## Cases

*A.L. Pharma, Inc. v. Shalala*,
  62 F.3d 1484 (D.C. Cir. 1995) .................................................................................... 7, 12, 15

*ABF Freight Sys., Inc. v. NLRB*,
  510 U.S. 317 (1994) ................................................................................................................ 7

*Action on Smoking & Health v. Civ. Aeronautics Bd.*,
  713 F.2d 795 (D.C. Cir. 1983) ............................................................................................... 10

*AFL-CIO v. Chao,*
  496 F. Supp. 2d 76 (D.C. Cir. 2007) ...................................................................................... 12

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*,
  988 F.2d 146 (D.C. Cir. 1993) ............................................................................................ 1, 6

*Am. Great Lakes Ports Ass'n v. Schultz*,
  962 F.3d 510 (D.C. Cir. 2020) ............................................................................................... 11

*Barnhart v. Thomas*,
  540 U.S. 20 (2003) ................................................................................................................... 4

*Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*,
  972 F.3d 83 (D.C. Cir. 2020) ................................................................................................. 11

*Cement Kiln Recycling Coal. v. EPA*,
  255 F.3d 855 (D.C. Cir. 2001) ............................................................................................... 13

*Citizens for Resp. and Ethics in Washington v. Trump*,
  438 F. Supp. 3d 54 (D.D.C. 2020) ......................................................................................... 11

*Clean Wis. v. EPA*,
  964 F.3d 1145 (D.C. Cir. 2020) ............................................................................................. 11

*Heartland Reg'l Med. Ctr. v. Sebelius*,
  566 F.3d 193 (D.C. Cir. 2009) ............................................................................................... 10

*Johnson v. Copyright Royalty Bd.*,
  969 F.3d 363 (D.C. Cir. 2020) ............................................................................................... 10

*Lockhart v. United States*,
  136 S. Ct. 958 (2016) ............................................................................................................... 4

4811-2892-0779.7

*NAACP v. Trump*,
  298 F. Supp. 3d 209 (D.D.C. 2018) .................................................................................... 15

*Nat. Res. Def. Council v EPA*,
  489 F.3d 1250 (D.C. Cir. 2007) ........................................................................................... 13

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) ............................................................................................................... 6

*Sharp v. Rosa Mexicano, D.C., LLC*,
  496 F. Supp. 2d 93 (D.D.C. 2007) ....................................................................................... 13

*Teva Pharms. USA, Inc. v. FDA*,
  441 F.3d 1 (D.C. Cir. 2006) ................................................................................................. 11

*United Steel v. Mine Safety & Health Admin.*,
  925 F.3d 1279 (D.C. Cir. 2019) ..................................................................................... 10, 11

*Utility Air Regulatory Grp. v. EPA*,
  134 S. Ct. 2427 (2014) ........................................................................................................... 4

*Williams v. Spencer*,
  883 F. Supp. 2d 165 (D.D.C. 2012) ..................................................................................... 13

*Youssef v. Holder*,
  62 F. Supp. 3d 96 (D.D.C. 2014) ........................................................................................... 2

*Zevallos v. Obama*,
  793 F.3d 106 (D.C. Cir. 2015) ............................................................................................... 6

**Statutes**

5 U.S.C. § 706 ............................................................................................................................... 5

21 U.S.C.
  § 355(b)(2)(A) ........................................................................................................................ 3
  § 355(b)(2)(B) ........................................................................................................................ 4
  § 355(c)(2)(A)(i) .................................................................................................................... 3
  § 355(c)(3) ............................................................................................................................. 4
  § 355(c)(3)(C) ........................................................................................................................ 5

**Rules**

Fed. R. Civ. P. 54(b) ..................................................................................................................... 2

**I.      INTRODUCTION[1]**

Lannett asks the Court to reconsider its Memorandum Opinion (Dkt. 63) and accompanying Order (Dkt. 64), in part,[2] because Lannett was not required to submit a patent certification and because FDA applied the correct timeline for approval.  Should the Court not disturb its prior conclusion that Lannett was required to submit a patent certification, Lannett requests the Court find that FDA not requiring a patent certification from Lannett was harmless error (because there was no applicable patent) and therefore FDA did not violate the APA.

If, however, this Court leaves in place its September 15, 2020 holding, the appropriate remedy under the *Allied-Signal* factors is remand to FDA without vacatur.  *See Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993).  Genus does not accept that standard, but it is governing here in the event the Court remands to FDA.  Applying that standard here would appropriately result in remand without vacatur.  The deficiency is easily corrected: Lannett could simply certify the absence of applicable patents as of the date of its application.  Additionally, vacatur would cause enormous disruption to the marketplace (eliminating all competition), to the public (as Genus is likely to raise prices as it previously did when it had the only product on the market), and to Lannett (by causing irreparable harm to Lannett's market position, inventory, regulatory status, and revenue).  Genus's contrary arguments

---

[1] The Court's September 15, 2020 Memorandum Opinion (Dkt. 63) is referred to herein as the Opinion, and cited as "Op. at _." The Complaint (Dkt. 1) is cited herein as "Compl. at ¶ _." Lannett's memorandum in support of its motion for summary judgment (Dkt. 28-1) is cited as "Lannett MSJ at _." Lannett's Supplemental Brief (Dkt. 55) is cited herein as "Lannett Supp. Br. at _." Genus's Motion to Vacate (Dkt. 66) is cited herein as "Motion to Vacate at _." The terms "APA," "CRL," "FDA," "Genus," "Lannett," and "FDCA" are used as defined in Lannett's MSJ.

[2] Lannett does not request reconsideration regarding the Court's determination that FDA correctly determined Genus's exclusivity period did not bar FDA from approving Numbrino.

are legally incorrect, demonstrably false, or both.

In the last alternative, Lannett requests that any vacatur not take immediate effect and instead FDA be first given an opportunity to address any deficiencies on remand.

## II.     DISCUSSION

### A.     The Standard is Met for Reconsideration.

Under Federal Rule of Civil Procedure 54(b), "any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims." "A motion to reconsider brought under Rule 54(b) may be granted 'as justice requires.'" *Youssef v. Holder*, 62 F. Supp. 3d 96, 98 (D.D.C. 2014) (citations omitted). "Considerations . . . include whether the court . . . made a decision beyond the adversarial issues presented to the court." *Id.* "[E]ven if the appropriate legal standard does not indicate that reconsideration is warranted, the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so." *Id.* at 99 (citation omitted). Here, there are good reasons for reconsidering, including that neither Genus's Complaint nor its summary judgment briefs alleged improper agency action related to the presence or absence of a patent certification, and FDA and Lannett did not make the fulsome arguments they would have had Genus sought relief on that basis (rather, the parties only indirectly and briefly addressed the issue in supplemental briefing). Further, the Court did not consider whether any error was harmless.

### B.     Lannett Was Not Required to Submit a Patent Certification.

#### 1.     The FDCA Does Not Require Patent Certifications Absent Any Patents.

By its plain terms, the FDCA does not require a patent certification from a 505(b)(2) applicant unless the application relies on studies that were conducted for another drug, and that drug is patented or has a patented use that overlaps with the application. The certification

2

provisions apply only when the applicant relies on investigations of safety and efficacy that "were conducted" for another, already-approved drug; where there is at least one associated "patent which claims the drug . . . or which claims a use for such drug for which the applicant is seeking approval"; and where "information is required to be filed [for that patent] under paragraph (1) or subsection (c)." § 355(b)(2)(A).  Paragraph (b)(1) and subsection (c) are the provisions that require new drug applicants to submit patents to the FDA for listing in the Orange Book once the drug is approved.  Where there is no such patent, paragraph (b)(2) requires no certification.

The Court incorrectly concluded that a "Paragraph I" certification is required when no such patent exists.  Op. at 20.  In fact, a Paragraph I certification applies only when a patent claiming the drug or use exists and is "required to be filed," but "has not been filed" with FDA.  § 355(c)(2)(A)(i).  Lannett submitted its application without relying on any investigations conducted for a patented drug.  Genus has conceded as much—that "Genus did not have patents when Lannett first submitted its application," and Genus's "Goprelto was not yet approved and, as a result, had no patents listed in FDA's 'Orange Book.'"  Motion to Vacate at 6; Compl. ¶ 41.  It follows that Lannett was not required to include a certification with its application, and that the statutory paragraph governing the timing of approval of "an application filed under subsection (b) which contains a certification" does not govern when FDA could make Lannett's approval effective.[3]

---

[3] Genus also argues a patent certification was required with what it calls Lannett's "resubmission." Motion to Vacate at 3–5. But Lannett was not required to submit a patent certification at the time of its response to FDA's Complete Response Letter.  This relates to the same dispute in the unresolved Count II over what Genus calls "resubmission."  *See* Lannett MSJ § IV(B).

### 2. Sentence 2's Reference to "Such an Application" Does Not Mandate a Different Construction.

In reasoning that "such an application" refers to "any later competing 505(b)(2) application," not just one with a Paragraph IV certification, the Court applied an exception to the rule of the last antecedent: "a pronoun or demonstrative adjective that is the subject of a sentence and does not have an antecedent in that sentence ordinarily refers to the *subject* of the preceding sentence." Op. at 12–13 (citations omitted). But "structural or contextual evidence" and "other indicia of meaning" can "rebut the last-antecedent inference," *Lockhart v. United States*, 136 S. Ct. 958, 965 (2016); *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003), and the related inference the Court drew, as well as the presumption of consistent usage, *Utility Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2441 (2014). Here several structural features overcomes those inferences.

*First*, reading "such an application" in Sentence 2 to mean *any* later competing 505(b)(2) application does not work unless "this paragraph" creates a comprehensive set of timelines. It does not: paragraph (c) governs the timing not of every 505(b)(2) application, but only those "contain[ing] a certification." § 355(c)(3). Because not all 505(b)(2) applications must contain a certification, "this paragraph" does not provide a timeline for all such applications, and the Court's reading creates a gap that Lannett's and FDA's reading avoids. The Court concluded that there is *always* a timeline in § 355(c)(3) that governs approval of a 505(b)(2) application, but as shown above, the Court over-read the scope of the Paragraph I certification requirement, which applies only when relevant patents exist and are required to be listed but have not been. When there are no patents at all, no certification is required; when there are only method-of-use patents that do not relate to "a use for which the applicant is seeking approval," only a "statement" is required, not a "certification." § 355(b)(2)(B). Thus, there are 505(b)(2) applications—including Lannett's—that do not require certifications, and accordingly, there are 505(b)(2) applications for which §

4

355(c)(3)(A)-(C) provide no timeline.  The Court's reading thus creates a broader patent certification requirement than § 355(b)(2)(A) imposes.

*Second*, the rest of Sentence 2 confirms that it is only addressing "the subset of subsequent applications with Paragraph IV certifications," Op. at 12:  it refers to "the thirty-month period referred to in subparagraph (C)"—*i.e.*, the thirty-month Hatch-Waxman stay of approval.  Such a period exists *only* when the application contains a Paragraph IV certification.  § 355(c)(3)(C).

Because Sentence 2 regulates only applications with a Paragraph IV certification, it provides no basis to set aside FDA's approval of Lannett's application.

### 3. FDA's Interpretation of the FDCA and Regulations.

As described in FDA's brief filed concurrently with this one, FDA's interpretation of the FDCA and FDA's own regulations also did not require Lannett to file a patent certification.

### C. If a Patent Certification Was Required, FDA's Acceptance and Approval of Lannett's Application Without a Patent Certification was Harmless Error.

In any event, FDA's acceptance and approval of Lannett's application without a patent certification was at most harmless error: because there were no applicable patents, a certification could not have changed the timeline for approval.  *See* Op. at 20-21.  The omission of a certification from Lannett's application—one that neither the agency nor Lannett believed was required—was at most a mere technicality, given there was no patent upon which to certify, and FDA knew it (as indicated by the FDA reviewer checking, "no patent certifications are required" in FDA's 505(b)(2) assessment of Lannett's application).  A.R. at FDASUPP012173.  (An FDA reviewer checked the same box for Genus.  A.R. at FDA001303.)  The presence or absence of a certification therefore did not affect the substance or the timing of the final agency action Genus is challenging.

The APA provides that, in making a determination of unlawful agency action under the APA, "due account shall be taken of the rule of prejudicial error."  5 U.S.C. § 706.  An error is

5

harmless if it is "not germane to the final agency . . . decision." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 659 (2007). For example, in *Zevallos v. Obama*, the D.C. Circuit held it would "not invalidate [the agency's] decision based on procedural error unless the errors alleged could have affected the outcome." 793 F.3d 106, 115 (D.C. Cir. 2015). The D.C. Circuit held that the agency's errors, including delay and failure to consider some evidence that it had lost, were harmless because the plaintiff "must," but could not, "show that a different process would have led [the agency] to a different decision." *Id.* Here, Genus cannot show that had FDA required Lannett to submit a patent certification under this Court's reading, the result would have been different. To the contrary, had Lannett submitted a patent certification under § 355(b)(2)(A), it would have certified there was no applicable patent, and FDA would have reached the same result on the same timeline. *See* Op. at 20-21. Thus, even on this Court's interpretation, any error was harmless, and no remand is required because there is no prejudicial error to remedy.

> **D.  If a Patent Certification Was Required, and This Court Declines to Find Harmless Error, the *Allied-Signal* Factors Show Remand Without Vacatur is Appropriate.**

Should the Court not reconsider its determination, Lannett respectfully submits that the proper remedy is remand to the agency without vacatur. Genus disputes the controlling D.C. Circuit precedent, but the decision whether to remand without vacatur is governed by *Allied-Signal*. The *Allied-Signal* test considers "the seriousness of the . . . deficiencies" and "the disruptive consequences of an interim change that may itself be changed." 988 F.2d at 150–51.

> **1.  Any Deficiency Was Not Serious and Could be Remedied on Remand.**

The omission of a patent certification was not a "serious" deficiency, given there was no patent to which to certify within the meaning of § 355(b)(2). Moreover, if FDA determines on remand that a patent certification should be filed, Lannett has now furnished a certification *nunc*

6

*pro tunc* certifying what Genus admits is true (Motion to Vacate at 6): that there were no applicable patents as of September 2017, the date of its initial application. *See* Declaration of John Abt ("Abt Decl.," attached as **Exhibit 1**), ¶ 14.

The D.C. Circuit has previously held that FDA has discretion to not revoke approval of an application that was approved despite a deficiency in the submission. In *A.L. Pharma, Inc. v. Shalala*, the challenger argued that Philips Roxane's application for an animal drug improperly relied on competitor A.L. Pharma data, and as such, FDA should not have approved the application. 62 F.3d 1484, 1488 (D.C. Cir. 1995). But the D.C. Circuit held that it was within FDA's discretion to not vacate approval for Philips Roxane's drug application, including because Philips Roxane later (after approval) cured the deficiency by submitting other data to rely on in place of the competitor's data. *Id.* at 1490. Specifically, the D.C. Circuit held, "Even if the agency had violated its regulation when it approved Philips Roxane's application, A.L.'s proposed remedy of vacatur . . . would be inappropriate in light of Philips Roxane's replacement of the reference to [the competitor data] in its application with a reference to the identical data in a different master file." *Id.* at 1489. The D.C. Circuit further explained, "To the extent that the misrepresentation harmed the FDA's administrative process, the agency has broad latitude to determine an appropriate response" and held, "It is well within the discretion of the FDA to decide not to penalize the company by withdrawing its approval of [the] NADA [New Animal Drug Application]." *Id.* at 1489–90 (citing *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317 (1994)).

This case is the same. If a patent certification was required, FDA may permissibly decide *not* to revoke Lannett's approved application, particularly given Lannett can easily cure by certifying the undisputed fact that there was no applicable patent as of the date of its initial 505(b)(2) application and, as noted above, it already has, *see* Abt Decl. ¶ 14. This is similar to

7

how Philips Roxane replaced its data references post-approval.  As *A.L. Pharma* is binding D.C. Circuit precedent that demonstrates that the omission of a patent certification was not serious, and that FDA need not revoke Lannett's approval on those grounds, the first *Allied-Signal* factor weighs in favor of remand without vacatur.

### 2. Vacatur Would Lead to Disruptive Consequences.

The second factor, too, weighs in favor of remand without vacatur, because vacating FDA's approval of Lannett's application would cause immense disruptive consequences in the marketplace, to the public, and to Lannett.  That is not just a prediction: it is based on what Genus has previously done in the absence of competition from Lannett.  As set forth in the attached Declaration of William Giannone ("Giannone Decl.," attached as **Exhibit 2**), Genus and Lannett had competing cocaine hydrochloride solution products from 2018 until Lannett temporarily ceased distribution to customers in August 2019, during the NDA process.  Giannone Decl. ¶ 4, 6. Within two months of Lannett exiting the market, Genus implemented a 37% price increase on its product, raising the Wholesale Acquisition Cost ("WAC") list price from $178 per unit to $245 per 4ml bottle.  *Id.* ¶ 8.  If Lannett's approval is vacated and it is compelled to exit the market, Genus can be expected to raise the price of its product again.  *Id.*  Moreover, Lannett's WAC for its generic product ($220.50 per 4ml bottle) is approximately 10% less than the price Genus charges for its product ($245 per 4ml bottle).  *Id.* ¶ 10.  Therefore, having Lannett's product on the market serves the public interest and the marketplace by providing consumers choice and creating price competition.  Removing that choice and that price competition would be disruptive.

In addition, vacatur of Lannett's approval could lead to shortages of the product in the market.  The Drug Enforcement Administration ("DEA") limits the amount of cocaine raw material a company may purchase for use in its manufacturing process of the finished dosage form.

Typically, the DEA grants quota requests for a given year based on the company's prior year sales of its product. If Lannett has its approval vacated and later reinstated, it is likely to affect Lannett's ability to obtain sufficient quota to supply its customers upon return to the market. *Id.* ¶ 11.

In addition to disruptive consequences to the marketplace and the public interest, there are also disruptive consequences to Lannett. Customers are concerned with being able to obtain consistent supply, and Lannett prides itself on being able to deliver such consistent reliable supply. *Id.* ¶ 13. After establishing an excellent reputation of consistently and reliably supplying this product, Lannett's reputation would suffer if, for a second time in two years, it was forced to withdraw its product from the market. *Id.* ¶¶ 2–6, 13. Moreover, if FDA's approval of Lannett's NDA were vacated and later reinstated, Lannett estimates it would lose revenue of $1–2 million each quarter for the foreseeable future until the approval was reinstated, *id.* ¶ 14, not to mention it would incur losses associated with being unable to recoup its $10 million investment in securing approval of its cocaine hydrochloride product. *Id.* ¶ 15. Lannett currently has finished product, active pharmaceutical ingredients used to manufacture its product, and other components in inventory valued at approximately $1.8 million. Over $1.3 million of a controlled substance excipient used to manufacture the raw material is currently consigned to a vendor. If Lannett's NDA were vacated and later reinstated, the material consigned to the vendor would likely need to be destroyed. *Id.* ¶ 12. Lastly, Lannett has contracts with certain of its customers that impose monetary penalties if it is unable to supply product. If Lannett's NDA were vacated and later reinstated, Lannett could be subject to significant contractual monetary penalties arising from being unable to supply customers to whom it was contractually obligated. *Id.* ¶ 16.

### E. <u>Genus's Arguments Are Contrary to the Law of This Circuit.</u>

The cases Genus relies upon are far afield and do not erode the applicability of the *Allied-*

4811-2892-0779.7

*Signal* test. *See* Motion to Vacate at 1–3. Each of these cases did not qualify for remand without vacatur for one or more of the following reasons:

First, they dealt with agency action with serious defects under factor 1 of the *Allied-Signal* test, such as failure to follow notice and comment procedures or explanations so inadequate that the reviewing court could not evaluate the agency explanation. *See e.g., Action on Smoking & Health v. Civ. Aeronautics Bd.*, 713 F.2d 795, 802 (D.C. Cir. 1983) (vacating agency's attempt to revoke rule without providing proper notice and comment); *Johnson v. Copyright Royalty Bd.*, 969 F.3d 363, 392 (D.C. Cir. 2020) (vacating Copyright Royalty Board's definition of "Service Revenue" because Board could not identify the source for its statutory authority to adopt that new definition). Per the D.C. Circuit, "Failure to provide the required notice and to invite public comment . . . is a fundamental flaw that 'normally' requires vacatur of the rule . . . under the first *Allied-Signal* factor"; "[s]o too, when an agency's explanation of the basis and purpose of its rule is so inadequate that the reviewing court cannot evaluate it." *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009). In contrast to these cases, any defect here was not serious under *Allied-Signal* because it is so readily curable. *See supra* § II.D.1.

Second, these cases did not involve apparent very disruptive consequences of vacatur under factor 2 of the *Allied-Signal* test. For example, vacatur that results in the reinstatement of prior agency rules in place before the challenged rules frequently is not disruptive at all or is only slightly disruptive, as it merely restores the status quo *ex ante*. *See, e.g., United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) (restoring the previous standard that had been replaced by the challenged rule). Here, as detailed *supra* § II.D.2, vacatur would be highly disruptive, not only to Lannett's operations, but to the marketplace and public interest.

Indeed, in some of Genus's cases, the D.C. Circuit vacated the agency action because the

10

agency did not argue the *Allied-Signal* factors compelled any other outcome. *See, e.g., Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 117 (D.C. Cir. 2020) (vacatur was appropriate because "the Railroad Administration has neither asked the court nor given us any reason to depart from that standard course of action [of vacatur]"); *United Steel*, 925 F.3d at 1287 (vacatur was appropriate because the agency "explain[ed] neither how the [challenged rule] can be saved nor how vacatur [would] cause disruption").

Third, at least one of Genus's cases involved vacatur *after* the agency had been given an opportunity on remand to address defects but had failed to do so. *See, e.g., Teva Pharms. USA, Inc. v. FDA*, 441 F.3d 1, 3–5 (D.C. Cir. 2006) (vacating agency action *after* agency had an opportunity on remand to address defects and failed on remand to act in accord with the D.C. Circuit's rulings).

Genus also cites dissents and other separate opinions that conflict with binding D.C. Circuit precedent. *See* Motion to Vacate at 2. But remand without vacatur is alive and well in the D.C. Circuit. *See, e.g., Clean Wis. v. EPA*, 964 F.3d 1145, 1177 (D.C. Cir. 2020) (remanding without vacatur); *Am. Great Lakes Ports Ass'n v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020) (affirming remand without vacatur). "[T]his Court is bound by Circuit precedent unless and until the Court of Appeals revises its decision or the decision is overruled." *Citizens for Resp. and Ethics in Washington v. Trump*, 438 F. Supp. 3d 54, 62 n. 5 (D.D.C. 2020).

### F. Each of Genus's Reasons Arguing for Vacatur Fails.

Rather than address the *Allied-Signal* test on its own terms, Genus supplies five "reasons" it believes vacatur is appropriate. Not only do Genus's "reasons" not track the appropriate standard, but in large part they are demonstrably false.

First, Genus argues that Lannett must submit a patent certification *prior to* application

11

approval, and thus Numbrino's approval must be vacated in any event (Motion to Vacate at 3), but Genus is incorrect.  The statutory reference to "each patent . . . which claims a use for such drug for which the applicant is seeking approval" identifies which patents must be covered in a certification, not whether the certification can be updated after approval.  And the FDA regulations Genus cites, 21 C.F.R. § 314.50(i)(6), deal with amending a previously filed certification, not with whether FDA can accept a certification to cure a deficiency identified by this Court.  Moreover, post-approval correction of harmless deficiencies is routine in FDA practice.  As the D.C. Circuit held in *A.L. Pharma*, 62 F.3d at 1489-90, just like FDA permissibly accepted Philips Roxane's replacement data post-approval, FDA is permitted to accept a patent certification from Lannett post-approval.  *See supra at* 7.  This is within FDA's discretion.

Second, Genus argues vacatur is appropriate because Genus believes it has identified other defects with FDA's approval of Lannett's application.  Motion to Vacate at 3-6.  But under *Allied-Signal,* Genus cannot bootstrap claims that the Court has not adjudicated into grounds for relief on the issue the Court has resolved.  It is the Court, not Genus, that identifies the "deficiencies" to be remedied.  The cases Genus cites in support of this proposition do not support Genus's argument.  In *AFL-CIO v. Chao,* 496 F. Supp. 2d 76 (D.C. Cir. 2007), before noting in passing that there were other unresolved challenges to the agency rule, the D.C. Circuit had already decided to vacate the rule based on a consideration of the *Allied-Signal* factors: the rule's procedural invalidity was "unquestionably a 'serious' deficiency," *id.* at 91, and there was a "low likelihood that vacatur would cause significant disruptions," *id.*   In *Nat. Res. Def. Council v. EPA*, the D.C. Circuit vacated EPA's "Boilers Rule" in its entirety—not because there were additional challenges to rule not yet reached but rather primarily "[g]iven the likelihood (if not certainty) that the Boilers Rule will change substantially as a result of our vacatur." 489 F.3d 1250, 1261 (D.C. Cir. 2007).  In

12

that case, there was no reason to reach the additional challenges, because the challenge the Court adjudicated made it nearly certain the rule could not survive. That is not so here, where FDA's approval of Numbrino could stand post-remand. Lastly, while the D.C. Circuit vacated the agency rule in *Cement Kiln Recycling Coal. v. EPA*, the D.C. Circuit's opinion concluded with the suggestion that any party to the proceeding "file a motion to delay issuance of the mandate," including "to request . . . that the current standards remain in place" while the rule is on remand. 255 F.3d 855, 872 (D.C. Cir. 2001). Here, Lannett similarly requests the approval of its Numbrino remain in place while the approval is on remand.

Third, Genus argues it is not likely FDA could remedy the "complicated issues" on remand. Motion to Vacate at 8. This argument by Genus is wrong, because as demonstrated above, FDA can simply accept a post-approval certification. *See supra* 6–8, 12.

Fourth, Genus alleges with no support that Lannett made an untrue statement in its application as to where its drug would be manufactured. Motion to Vacate at 8–9. In fact, Lannett underwent the proper process and utilized FDA's well-established regulatory procedure to transfer the manufacturing of Numbrino to its plant in Carmel, New York. Lannett did not launch its Numbrino manufactured in Carmel, New York until after receiving FDA's authorization for the change on March 10, 2020. *See* Abt Decl. ¶¶ 1–13; Giannone Decl. ¶¶ 9–10. Nor is this meritless argument properly part of this proceeding, for multiple reasons. First, it is outside the scope of this case and the Administrative Record. *See Williams v. Spencer*, 883 F. Supp. 2d 165, 181 n.8 (D.D.C. 2012) ("plaintiff cannot add a new claim through a[] . . . brief"); *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 97 n.3 (D.D.C. 2007) ("plaintiff may not, through summary judgment briefs, raise the new claims . . . because plaintiff did not raise them in his complaint, and did not file an amended complaint"). Indeed, Genus admits this question is outside the scope of

13

this case.  *See* Motion to Vacate at 9 ("FDA should require Lannett to submit a new application *for reasons entirely aside from those presented in this case*.") (emphasis added).  Second, it is based on the mistaken premise that it could lead to Lannett being forced to *withdraw and resubmit its application*, not just correct any deficiency.  But the manual Genus cites involves what ordinarily happens after an *FDA finding* of "*fraudulent*" and unreliable "*data*" in an application.  *Id.* at 8-9.  Even if Genus's allegations about the Wyoming facility were true, they would be in a different category altogether; Genus has alleged no problem with Lannett's data, and FDA has made and will make no finding of fraud.  There is no basis whatsoever to indulge Genus's wild speculation that FDA will someday require Lannett to withdraw its application.

Fifth, Genus cries prejudice to Genus.  But prejudice to the petitioner is not a factor of the *Allied-Signal* test.  In any event, just as Genus claims leaving in place Lannett's approval would prejudice Genus, vacating that approval would prejudice Lannett.  And, the equities impacting the marketplace and the public, not just Lannett, decisively point to not vacating Lannett's approval.  *See supra* § II.D.2 (listing harm that vacatur would cause to the marketplace, public interest, and Lannett).  Moreover, on the subject of equities, it would be unjust to Lannett for its approval to be vacated on the basis of a missing patent certification that neither Lannett nor FDA understood was required and that, had it been submitted, would not have impacted the approval of Lannett's application nor the timeline for that approval.

### G. Should this Court Remand with Vacatur, Lannett Requests that the Court First Allow the Agency Time to Act.

Should this Court vacate FDA's approval of Numbrino, Lannett requests that the vacatur

not take effect unless FDA fails to act reasonably on remand.[4]  If Lannett's approval is vacated, a stay of that vacatur is warranted based on the considerations discussed above as to the harm and disruptive consequences to the marketplace, public interest, and Lannett.  *See supra* § II.D.2.

Courts have remanded cases to agencies with vacatur but with a stay of vacatur such that the vacatur does not go into effect unless the agency fails to act reasonably on remand. *See, e.g., A.L. Pharma*, 62 F.3d at 1492 (on separate issue than that related to competitor data, the D.C. Circuit remanded with vacatur to take effect 90 days following the issuance of the opinion unless FDA provided an adequate justification regarding its finding that two drugs were bioequivalent within 90 days); *NAACP v. Trump*, 298 F. Supp. 3d 209, 245 (D.D.C. 2018) (staying vacatur pending actions on remand within 90 days).  The availability of this option and the possibility of further judicial review of Genus's Counts I and II fully address Genus's concern that its case may otherwise be effectively extinguished without any judicial ruling.

### III.   CONCLUSION

For the foregoing reasons, Lannett respectfully requests the Court reconsider its Opinion and Order.  Lannett and FDA are entitled to summary judgment on all claims.  Even if the Court adheres to its decision to remand, it should do so without vacatur.

---

[4] Lannett would separately seek a stay of any vacatur pending resolution of any appeal of this case, should circumstances warrant that request. Should the Court decide to order vacatur, therefore, Lannett requests that the Court defer the effectiveness of that order until Lannett can seek a stay pending appeal from this Court and, if necessary, from the Court of Appeals.

October 30, 2020                      Respectfully submitted,

/s/ Lori A. Rubin
Lori A. Rubin, DC Bar No. 1004240
David A. Hickerson, DC Bar No. 414723
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington, D.C. 20007-5109
(202) 672-5300
dhickerson@foley.com
larubin@foley.com

*Attorneys for Intervenor-Defendant Lannett Co., Inc.*