IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GENUS LIFESCIENCES, INC.,

      *Plaintiff*,

v.

XAVIER BECERRA, Secretary of Health
and Human Services, et al.,

      *Defendants*,

LANNETT CO., INC.,

      *Intervenor-Defendant*.

Case No. 1:20-cv-00211-TNM

**FEDERAL DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF
GENUS LIFESCIENCES, INC.'S MOTION FOR *IN CAMERA* REVIEW AND
FOR ORDER COMPELLING REMOVAL OF FDA REDACTIONS**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

I.      FDA Properly Redacted Information In The Emails. ..........................................1

        A.      FDA Properly Redacted Deliberative Material.......................................................2

              1.      Genus's Arguments Mischaracterize The Emails. ......................................4

              2.      Genus Has Not Identified A Need For Privileged Information That Outweighs FDA's Interest In Non-Disclosure, Nor Has It Identified Any Improper Purpose. ..............................................................6

        B.      The Redacted Material Is Protected By Attorney-Client Privilege. ........................9

II.     *In Camera* Review Is Unnecessary......................................................................11

CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Allen v. CIA*,
  636 F.2d 1287 (D.C. Cir. 1980) .................................................................................... 11

*Am. Petroleum Tankers Parent, LLC v. United States*,
  952 F. Supp. 2d 252 (D.D.C. 2013) ................................................................................. 8

*Breiterman v. United States Capitol Police*,
  323 F.R.D. 36 (D.D.C. 2017) ........................................................................................... 7

*Chem. Weapons Working Grp. v. EPA*,
  185 F.R.D. 1 (D.D.C. 1999) ........................................................................................... 11

*\*Coastal States Gas Corp. v. Dep't of Energy,*
  617 F.2d 854 (D.C. Cir. 1980) .............................................................................. 1, 2, 4, 9

*Ctr. for Auto Safety v. EPA*,
  731 F.2d 16 (D.C. Cir. 1984) ......................................................................................... 12

*DeFraia v. CIA*,
  311 F. Supp. 3d 42 (D.D.C. 2018) ................................................................................. 12

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ..................................................................................................... 2, 4, 5

*Doe 2 v. Esper,* No. 17-1597 (CKK), 2019 WL 4394842 (D.D.C. Sept. 13, 2019) ....................... 9

*EPA v. Mink*,
  410 U.S. 73 (1973) ........................................................................................................... 2

*In re Anthem, Inc. Data Breach Litig.*,
  236 F. Supp. 3d 150 (D.D.C. 2017) ................................................................................. 7

*In re Sealed Case*,
  121 F.3d 729 (D.C. Cir. 1997) ..................................................................................... 7, 9

*Info. Ctr. v. Dep't of Homeland Sec.*,
  384 F. Supp. 2d 100 (D.D.C. 2005) ................................................................................. 9

*Judicial Watch, Inc. v. FDA*,
  449 F.3d 141 (D.C. Cir. 2006) ..................................................................................... 2, 3

*Judicial Watch, Inc. v. U.S. Postal Serv.*,
  297 F. Supp. 2d 252 (D.D.C. 2004) ............................................................................... 10

*Kidd v. Dep't of Justice*,
    362 F. Supp. 2d 291 (D.D.C. 2005) ............................................................................... 7, 8

*Mapother v. U.S. Dep't of Justice*,
    3 F.3d 1533 (D.C. Cir. 1993) ............................................................................................ 2

*Mead Data Cent. Inc. v. U.S. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ........................................................................................ 10

*Morley v. CIA*,
    699 F. Supp. 2d 244 (D.D.C. 2010), *aff'd in relevant part*, 466 F. App'x 1 (D.C. Cir. 2012) ... 7

*Nat'l Sec. Archive v. CIA*,
    752 F.3d 460 (D.C. Cir. 2014) .................................................................................. passim

*NLRB v. Jackson Hosp. Corp.*,
    257 F.R.D. 302 (D.D.C. 2009) ........................................................................................ 11

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ..................................................................................................... 2, 8

*Oceana, Inc. v. Ross*,
    290 F. Supp. 3d 73 (D.D.C. 2018) ................................................................................... 1

*PHE, Inc. v. Dep't of Justice*,
    983 F.2d 248 (D.C. Cir. 1993) ........................................................................................ 11

*Quinon v. FBI*,
    86 F.3d 1222 (D.C. Cir. 1996) .................................................................................. 11, 12

*Shapiro v. CIA*,
    247 F. Supp. 3d 53 (D.D.C. 2017) ................................................................................... 4

*Spirko v. U.S. Postal Serv.*,
    147 F.3d 992 (D.C. Cir. 1998) ........................................................................................ 11

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997) ...................................................................................... 2, 9

*Thomas v. Cate*, 715 F. Supp. 2d 1012 (E.D. Cal. 2010) ................................................................ 9

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
    141 S. Ct. 777 (2021) ....................................................................................................... 2

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ......................................................................................................... 9

*Vaughn v. Rosen*,
    523 F.2d 1136 (D.C. Cir. 1975) .................................................................................... 4, 5

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
   250 F.R.D. 251 (D. Md. 2008) .......................................................................................... 11

## **FEDERAL STATUTES**

21 U.S.C. § 355(b)(2) ...................................................................................................... 3

5 U.S.C. § 704 .................................................................................................................. 7

## INTRODUCTION

In its motion, Genus Lifesciences, Inc. ("Genus") provides no reason for the Court to reconsider its January 27, 2021 order denying Genus's prior request for *in camera* review and removal of redactions. While now limited to fewer emails, the motion otherwise relies on the same arguments, case law, and characterizations of the record that this Court already rejected. Moreover, as detailed below and in the attached Declaration of Elizabeth Jungman (the "Jungman Declaration"), the U.S. Food and Drug Administration ("FDA") properly redacted privileged information in these emails and has released all non-privileged materials.[1] Accordingly, *in camera* review is unnecessary, removal of the redactions is unwarranted, and the Court should deny Genus's motion.

## ARGUMENT

**I.     FDA Properly Redacted Information In The Emails.**

FDA properly redacted information in the emails at issue pursuant to the deliberative process and attorney-client privileges. FDA also has determined there is no additional factual or otherwise non-privileged information in the emails that it could reasonably segregate and release. *See* Jungman Decl. ¶ 10.

---

[1] Genus obtained the emails at issue through related Freedom of Information Act ("FOIA") litigation. *See Latham & Watkins LLP v. FDA*, No. 1:20-cv-00509-TNM (D.D.C. 2020). The redactions Genus seeks to have removed were marked under FOIA Exemption 5, which encompasses civil discovery privileges, including the deliberative process and attorney-client privileges. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). Courts often look to FOIA cases to determine whether material that a party contends should be included in an administrative record is properly excluded as deliberative. *See Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 83 (D.D.C. 2018).

A. **FDA Properly Redacted Deliberative Material.**

The redacted portions of the internal FDA emails at issue here are textbook examples of confidential material that the deliberative process privilege covers. As the Supreme Court recently explained, the privilege is intended to foster candid discussions that aid agency decision-making:

> To protect agencies from being "forced to operate in a fishbowl," *EPA v. Mink*, 410 U.S. 73, 87 (1973), the deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated," *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The privilege is rooted in "the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001). To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure.

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (internal citations cleaned up). "In other words, agency officials should be judged by what they decided, not for matters they considered before making up their minds." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014).

To fall within the deliberative process privilege, information in a record must be both predecisional and deliberative. *See Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A document is "predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (quoting *Coastal States*, 617 F.2d at 866); *see also Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (similar). The privilege applies broadly to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866.

The Jungman Declaration establishes that the redacted portions of the emails are both predecisional and deliberative. The decisions at issue involved FDA's review of Genus's new drug application ("NDA") for Goprelto and Lannett's NDA for Numbrino. Jungman Decl. ¶ 11. The first email chain consists of discussions among staff in the Center for Drug Evaluation and Research ("CDER") about whether the timing of approval of Genus's application could affect action on Lannett's application. *Id*. ¶¶ 5, 11 (discussing FDAAddndmSupp012283-85). The second email chain contains discussion about whether Lannett's resubmission could be affected by Goprelto's exclusivity. *Id*. ¶ 7, 11 (discussing FDAAddndmSupp012288-90).

The redacted portions of the email chains contain confidential, intra-agency discussions and deliberations that "represent CDER staff's consideration of how to handle novel legal and regulatory issues (including those related to timing) raised by the submission to FDA, pursuant to 21 U.S.C. § 355(b)(2), of two separate new drug applications for drug products containing the same new chemical entity—cocaine." Jungman Decl. ¶ 11. The emails are predecisional because they were generated prior to, and in assistance of, the decisions at issue. *Id*. ¶ 12; *see also Judicial Watch v. FDA*, 449 F.3d at 151; *Nat'l Sec. Archive*, 752 F.3d at 463 ("To be pre-decisional, the communication (not surprisingly) must have occurred before any final agency decision on the relevant matter."). The redacted portions of the emails are deliberative because "they reflect the preliminary views of FDA staff regarding the novel legal and regulatory questions [raised by the Genus and Lannett applications], and contain the opinions, impressions, analysis, and advice of agency employees in considering these questions." Jungman Decl. ¶ 12.

Furthermore, the redacted portions of the emails were created as part of the regular and necessary decision-making process in which FDA staff engage when reviewing and approving NDAs. *Id*. ¶ 13. These critical intra-agency discussions require an "iterative" process and result

3

in decisions that "are always reached after a certain amount of internal discussion." *Id*. The redacted materials are thus precisely the kinds of recommendations, drafts, suggestions, and other subjective documents that the deliberative process privilege protects from disclosure. *See Coastal States*, 617 F.2d at 866; *Shapiro v. CIA*, 247 F. Supp. 3d 53, 63 (D.D.C. 2017) ("Information is deliberative if 'it makes recommendations or expresses opinions on legal or policy matters.'") (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).

1.  **Genus's Arguments Mischaracterize The Emails.**

Genus recycles arguments from its earlier motion to compel, claiming that the redacted emails are not deliberative because they purportedly reflect "instructions" by a senior employee to junior employees regarding agency decisions. As FDA previously explained (ECF 58 at 19), Genus mischaracterizes the emails and their factual context.

a.  FDAAddndmSupp012283.

Genus argues that Shelly Kapoor's October 30, 2017 email is not predecisional because "context shows instead that it was an instruction from a senior official [*i.e.*, Jay Sitlani] to a junior [*i.e.*, Kapoor]." Pl.'s Mot. at 4 (citing FDAAddndmSupp012283). Genus further contends that the email is not deliberative because it does not reflect an "exchange of ideas" and because it relates to FDA's ultimate decision to approve the applications. *Id*. at 5.

Genus's arguments have no merit. First, Genus's characterizations of the email as conveying an instruction or factual material are flatly inconsistent with Kapoor's statement that Sitlani *asked* if something would be *possible*, and by Rigoberto Roca's response that they "talk some more later." FDAAddndmSupp012283. The email chain instead conveys the internal discussions that are part of FDA's iterative NDA-review process. *See* Jungman Decl. ¶¶ 5, 11-13.

Second, Sitlani did not have the authority to instruct Roca or Kapoor to take any action. Roca was the Deputy Director of the Division of Anesthesia, Analgesia, and Addiction Products,

4

which is the division within the Office of New Drugs ("OND") that reviewed and determined whether to approve Genus's and Lannett's NDAs. Jungman Decl. ¶¶ 4, 6. Kapoor was the regulatory project manager for Lannett's application in the same division. *Id*. ¶ 6. Meanwhile, Sitlani served in FDA's Office of Regulatory Policy, *id.*, which "assists the application reviewers [in OND] by providing advice on regulatory and policy questions that are raised during the review process." *Id*. ¶¶ 4, 6. That is, Sitlani assisted and provided advice to Kapoor and other employees in OND, but had no decision-making authority over them. *Id*. ¶4.[2] Thus, Sitlani had no authority to instruct Kapoor or Roca to take actions regarding Genus's and Lannett's NDAs.

Third, the redacted email is not "factual" in nature simply because it relates to a decision that FDA ultimately made. By their nature, all deliberative materials relate to potential agency decisions. *See, e.g.*, *Nat'l Sec. Archive*, 752 F.3d at 462. Genus's argument thus runs counter to the very purpose of the privilege.

      b.    FDAAddndmSupp012289-90.

As to FDAAddndmSupp012289-90 (Jay Sitlani's February 21, 2018 email), Genus again argues that the redacted material appears to be Sitlani's "instructions" to a subordinate, this time concerning the legal implications of a potential agency action. Pl.'s Mot. at 5. Genus does not dispute that this email is pre-decisional, but it contends that the exchange between Sitlani and Kapoor was not deliberative because Sitlani stated that reaching a final decision would require additional discussions with another FDA office, the Office of Chief Counsel. *Id*. at 5-6. Genus has it backwards.

---

[2] Sitlani also chaired the CDER Exclusivity Board, which provides recommendations for exclusivity determinations made by CDER, but the Exclusivity Board did not review or make any recommendations regarding Lannett's filing or approval. *Id*. ¶ 6.

5

First, as discussed above, Sitlani did not have authority to instruct Kapoor or others in OND regarding the timing or outcome of OND actions on Genus's or Lannett's applications. Second, internal discussions that precede a final decision are precisely the type of communications that the deliberative process privilege is intended to protect. The unredacted portions of Sitlani's February 21, 2018 email make clear that he was offering preliminary statements about an issue for which FDA had not reached a final decision. In response to Kapoor's question regarding the effect of two separate NDAs for drug products containing the same new chemical entity, Sitlani stated that Kapoor had raised a novel question that FDA "ha[s]n't quite addressed as yet from a legal and policy perspective. . . ." FDAAddndmSupp012289. Sitlani further emphasized the preliminary nature of his statements, advising Kapoor that the issue "needs further discussion with [the Office of Chief Counsel] and additional legal review." FDAAddndmSupp012289-90. By its own terms, Sitlani's email consists of preliminary statements or views subject to further discussion with other FDA employees—that is, it consists of predecisional and deliberative statements. Indeed, Kapoor later followed up with additional questions, and Sitlani advised that the issue was subject to further discussions and deliberations within FDA. *Id*. The exchange was therefore the very type of "give-and-take" that the deliberative process privilege protects.

> **2.   Genus Has Not Identified A Need For Privileged Information That Outweighs FDA's Interest In Non-Disclosure, Nor Has It Identified Any Improper Purpose.**

Genus argues in the alternative that, even if the deliberative process privilege would normally apply, the Court should disregard it because Genus's need for the information outweighs the public's interest in protecting FDA's internal deliberations and because the redactions allegedly shield improper agency conduct. *See* Pl.'s Mot. at 6. Neither argument has merit. "Although the deliberative process privilege is not absolute," a private plaintiff seeking to overcome it must "articulate a need that would outweigh the public interest in protecting [FDA's]

6

internal deliberations." *Breiterman v. United States Capitol Police*, 323 F.R.D. 36, 46 (D.D.C. 2017). When balancing those interests, courts consider: "'[1] the relevance of the evidence, [2] the availability of other evidence, [3] the seriousness of the litigation, [4] the role of the government [in the litigation], and [5] the possibility of future timidity by government employees' should the materials be released." *In re Anthem, Inc. Data Breach Litig.*, 236 F. Supp. 3d 150, 159 (D.D.C. 2017) (quoting *In re Sealed Case*, 121 F.3d 729, 737-38 (D.C. Cir. 1997) (per curiam)). As the party seeking disclosure of redacted material, Genus "bears the burden of demonstrating [that] the balance of interests tips in [its] favor." *Id.* (citing *Sealed Case*, 121 F.3d at 737). The bar to establish "need" for deliberative documents is particularly high where, as here, the challenge is under the Administrative Procedure Act ("APA"), because judicial review is to be based on final agency action, not predecisional materials. *See* 5 U.S.C. § 704.

The public has a strong interest in protecting FDA's internal deliberations because disclosure would inhibit the frank and candid expression of views and the sharing of information that are essential for FDA to carry out its responsibilities. *See* Jungman Decl. ¶¶ 13-14; *see also Morley v. CIA*, 699 F. Supp. 2d 244, 255-56 (D.D.C. 2010) (stating that the deliberative process privilege is "intended to prevent chilling future government employees from engaging in frank discussions during the deliberative process"), *aff'd in relevant part*, 466 F. App'x 1 (D.C. Cir. 2012); *Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 296 (D.D.C. 2005) (protecting documents on the basis that disclosure would "inhibit drafters from freely exchanging ideas, language choices, and comments in drafting documents"). Predecisional materials like the emails at issue may reflect only the views of a few individuals rather than the decision that the agency ultimately reaches, and disclosing them would introduce public confusion about FDA's reasoning for a final decision. *See* Jungman Decl. ¶ 14. Disclosure also would chill FDA staff's ability to express preliminary views

7

or ask questions openly, which would undermine the "solicitation and expression of diverse views" that FDA requires for effective decision-making. *Id*. In short, "[d]isclosure would seriously impair FDA's decision-making function." *Id.*; *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975) (explaining that the purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions").

As a threshold matter, the emails at issue are not relevant to the outcome of this case. In particular, the date Lannett *submitted* its application—not the date FDA *filed* it—is relevant to the exclusivity question Genus raises in its complaint. This is because 5-year new chemical entity exclusivity bars the *submission,* not the filing, of subsequent applications. *See* 21 U.S.C. § 355(c)(3)(E)(ii) ("no [subsequent 505(b)(2)] application . . . may be submitted . . ."). Likewise, whether Sitlani referred to Lannett's resubmission as an "NDA" in an informal email exchange is irrelevant to the legal question of whether such resubmission was barred by Goprelto's 5-year NCE exclusivity.

In any event, Genus does not identify anything in the record indicating that FDA engaged in misconduct. The emails reflect discussion of FDA staff's preliminary views regarding novel legal and regulatory questions—not that FDA took any improper action. *See Am. Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 268-69 (D.D.C. 2013) ("The Plaintiff's invocation of 'misconduct' appears to be nothing more than an attempt to end-run the more stringent showing the Plaintiff must make to demonstrate bad faith or improper motive sufficient to overcome the deliberative process privilege."). The improper activity that Genus alleges—that FDA attempted to benefit Lannett by allegedly "delaying Genus's approval until after Lannett's filing date" (Pl.'s Mot. at 2)—is undermined by information in the administrative record. The record establishes that Genus's application was not ready for approval before FDA accepted

Lannett's application for filing in November 2017. *See* ECF 58 at 19-20 (summarizing record evidence). Any delay in that approval was thus not the result of an improper motive. In short, Genus's arguments regarding the deliberative process privilege are meritless.[3]

### B. The Redacted Material Is Protected By Attorney-Client Privilege.

The attorney-client privilege also protects the redacted material from disclosure. As the D.C. Circuit has recognized, the government "needs the same assurance of confidentiality" as a private party "so it will not be deterred from full and frank communications with its counselors." *Coastal States*, 617 F.2d at 863; *see also Tax Analysts*, 117 F.3d at 617 (observing that government agencies have the same attorney-client privilege as private parties). In the agency context, privilege can be inferred where "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests." *Coastal States*, 617 F.2d at 863. The privilege encompasses both "facts divulged by a client to his attorney" and "any opinions given by an attorney to his client based on, and thus reflecting, those facts as well as communications between attorneys that reflect client-supplied information." *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 114 (D.D.C. 2005) (citing *Coastal States,* 617 F.2d at 863). When properly invoked, the attorney-client privilege is absolute. *See Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981).

Here, the attorney-client privilege applies to the redacted material because it: "(1) involves confidential communications between an attorney and his client and (2) relates to a legal matter

---

[3] Genus cites three inapposite cases to describe the standard for overcoming the deliberative process privilege. *See* Pl.'s Mot. at 6. *Sealed Case*'s holding addressed the presidential-communications privilege, 121 F.3d at 757-62, and *Doe 2 v. Esper* and *Thomas v. Cate* involved privileged information that was central to resolving the constitutional issues before the court. *See* No. 17-1597 (CKK), 2019 WL 4394842, at *8 (D.D.C. Sept. 13, 2019); 715 F. Supp. 2d 1012, 1026-28 (E.D. Cal. 2010). Here, however, the privileged information is not relevant to the legal questions at issue.

9

for which the client has sought professional advice." *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 267 (D.D.C. 2004) (cleaned up). Jay Sitlani served in the Office of Regulatory Policy, where "he, among other things, consulted with the Office of Chief Counsel to obtain and convey to CDER advice on the FDCA's legal requirements." Jungman Decl. ¶ 6; *see also id.* ¶ 3. Sitlani's communications with Kapoor were confidential because they were internal and non-public. *Id.* ¶ 11; *see also id*. ¶¶ 5, 7; *Mead Data Cent. Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 253 (D.C. Cir. 1977). And they related to a legal matter because Sitlani, working with the Office of Chief Counsel, conveyed advice regarding novel legal and policy issues related to Lannett's application. Jungman Decl. ¶¶ 5-7, 11, 12.

To illustrate, FDAAddndmSupp012283 is part of a series of emails initiated by Sara Stradley, OND's Associate Director of Regulatory Affairs. Stradley stated, "I am working with Jay Sitlani for some legal input" on the Lannett NDA. FDAAddndmSupp012284. Later, Kapoor—an OND employee—emailed that she had spoken with Sitlani and relayed a question that he had asked. The context indicates that Kapoor's conversation with Sitlani was part of the "legal input" that Stradley and OND sought from the Office of the Chief Counsel.

Likewise, FDAAddndmSupp012289-90 is part of a series of emails in which Kapoor poses questions to Sitlani. As discussed above, the redacted material on FDAAddndmSupp012289-90 contains Sitlani's response to a novel "legal and policy" question, FDAAddndmSupp012289, and he advised Kapoor that the issue "needs further discussion with [the Office of Chief Counsel] and additional legal review." FDAAddndmSupp012290. A week later, he advised Kapoor that he since had "spoke[n] to [the Office of Chief Counsel] about this issue." FDAAddndmSupp012289. Again, the context of these emails indicates that Kapoor sought advice from the Office of Chief

Counsel regarding a novel legal matter. Accordingly, the email redactions at issue are covered by the attorney-client privilege.

## II.     *In Camera* Review Is Unnecessary.

Because FDA has properly invoked the deliberative process and attorney-client privileges, there is no need for this Court to review the emails *in camera*. District courts have substantial discretion in deciding whether to conduct an *in camera* review to assess a claimed privilege, but this "should be the exception, and not the norm." *NLRB v. Jackson Hosp. Corp.*, 257 F.R.D. 302, 308 (D.D.C. 2009) (citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 265-66 (D. Md. 2008)). Here, *in camera* review is unnecessary because the Jungman Declaration demonstrates that the redacted portions of the emails at issue are privileged. The emails are also not relevant to the legal questions central to this case, and, in any event, Genus does not identify any grounds to indicate that FDA engaged in misconduct. *See Chem. Weapons Working Grp. v. EPA*, 185 F.R.D. 1, 1 n.1 (D.D.C. 1999) (concluding that *in camera* review was "unnecessary" where agency's affidavits were adequate to establish the privilege).

Genus relies on FOIA case law to argue that not conducting *in camera* review might be reversible error. Pl.'s Mot. at 3-4 (citing *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996); *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998)). But FOIA's specific statutory provision regarding *in camera* review does not apply because the issue here involves a request to insert deliberative documents into the administrative record. Even if FOIA's standard applied, FDA would easily satisfy it. *In camera* reviews under FOIA are "generally disfavored," *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 252-53 (D.C. Cir. 1993) (cleaned up), and a district court "should first offer the agency the opportunity to demonstrate, through detailed affidavits and oral testimony, that the withheld information is clearly exempt and contains no segregable, nonexempt portions." *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980); *see also Spirko,* 147 F.3d at 997.

11

When an agency meets its burden through affidavits, as FDA does here, "*in camera* review is neither necessary nor appropriate." *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 23 (D.C. Cir. 1984) (affirming district court's decision not to review 19 documents *in camera* where agency affidavit established basis for claimed FOIA exemption); *DeFraia v. CIA*, 311 F. Supp. 3d 42, 50-51 (D.D.C. 2018) (denying request for *in camera* review of seven documents where agency affidavit established basis for claimed FOIA exemption).[4]  Accordingly, the Court should deny the motion.

## CONCLUSION

For the reasons stated above, the Court should deny Genus's motion.

Dated:  April 28, 2021                                          Respectfully submitted,


Of Counsel:

DANIEL BARRY
Acting General Counsel
U.S. Department of Health
And Human Services

ANNAMARIE KEMPIC
Deputy Chief Counsel, Litigation
Food and Drug Administration

MUSTAFA ÜNLÜ
Food and Drug Division, OGC
Office of the Chief Counsel, FDA
White Oak Room 4428
10903 New Hampshire Avenue
White Oak 31 Room 4562
Silver Spring, MD 20993-0002
(301) 796-3396

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

MICHAEL D. GRANSTON
Deputy Assistant Attorney General
Civil Division

GUSTAV W. EYLER
Director
Consumer Protection Branch

HILARY K. PERKINS
Assistant Director

 /s/ Kathleen B. Gilchrist
KATHLEEN B. GILCHRIST
(D.C. Bar No. 230445)

---

[4] Genus points to a single instance in which FDA did not oppose *in camera* review in a different case, *see* Pl.'s Mot. at 4, but the agency's approach in one case based on unique facts does not bind it in future cases, and making such reviews routine would run afoul of the D.C. Circuit's admonition that "an *in camera* review should not be resorted to as a matter of course. . . ." *Quinon*, 86 F.3d at 1228 (addressing *in camera* review under FOIA).

12

Trial Attorney
U.S. Department of Justice
Civil Division
450 5th Street, NW
Washington, DC 20001
(202) 305-0489
Kathleen.B.Gilchrist@usdoj.gov

*Counsel for Defendants*

13